# LOUDOUN COUNTY DEPARTMENT OF SOCIAL SERVICES, ET AL.

## v.

# PHYLLIS MCLEOD ETZOLD

Record No. 920572

January 8, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.,
and Poff, Senior Justice

*Joan E. Jennings, Assistant County Attorney (O. Leland Mahan; Ronald K. Ingoe*, on briefs), for appellants.
*Spencer D. Ault (Ault & Stein*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this case we consider the conditions under which the Court of Appeals has jurisdiction to review a child custody order of an experimental family court.

In 1988 the Loudoun County Department of Social Services (Department) filed a petition in the Loudoun County Juvenile and Domestic Relations District Court seeking emergency removal of Kaitlyn Dixie McLeod from her mother, Phyllis McLeod. The district court granted that petition and awarded custody of the child to the Department. Several subsequent hearings were held involving foster care service plans, custody, and visitation rights.

The Loudoun County Juvenile and Domestic Relations District Court was designated an experimental family court by the Judicial Council of Virginia, pursuant to Code § 20-96.1, effective January 1, 1990.

On March 15, 1990, the Department filed a revised foster care service plan for Kaitlyn. In response, Phyllis McLeod Etzold[1] filed a petition asking the court to return full legal and physical custody of Kaitlyn to her. Following a hearing on May 3 and 4, the court ordered the Department to return Kaitlyn to her mother's custody on May 10, 1990 under certain conditions.[2]

On May 8, 1990, Kaitlyn's guardian *ad litem* and Phyllis G. and H. Ronald McLeod, Kaitlyn's grandparents, who had intervened in 1989, filed an emergency petition in the Circuit Court of Loudoun County seeking to suspend enforcement of the family court order. The circuit court granted the emergency petition on May 14, 1990.

Kaitlyn's guardian *ad litem*, the grandparents as intervenors, and the Department filed appeals from the family court order in the Circuit Court of Loudoun County. The Department also filed a petition for termination of Phyllis Etzold's residual parental rights. On December 20, 1990, following an eleven-day *ore tenus* hearing, the circuit court entered an order denying Phyllis Etzold's motion for custody of Kaitlyn and granting the Department's petition for termination of residual parental rights.

On appeal to the Court of Appeals Phyllis Etzold challenged the judgment of the circuit court on both substantive and jurisdictional grounds. The Court of Appeals did not consider the alleged substantive errors, but determined that, under the provisions of Code § 17-

---

[1] Phyllis McLeod married Tom Etzold on July 27, 1990.

[2] While the return of custody was to be immediate, the final order was not entered until June 28, 1990.

116.05:5(1)(b), the Court of Appeals rather than the circuit court had appellate jurisdiction of a family court order establishing custody. The Court of Appeals, therefore, vacated the judgment of the circuit court, and remanded the case to the Loudoun County Family Court for further proceedings.

The Department, the grandparents, and the guardian *ad litem* then filed a petition for appeal with this Court. Because the determination of the proper appellate jurisdiction for orders of experimental family courts encompassed in Code § 17-116.05:5(1)(b) is a matter of significant precedential value, Code § 17-116.07(B), we awarded an appeal. Code § 17-116.09. For the following reasons, we will reverse the judgment of the Court of Appeals.

■ In 1989 the General Assembly enacted legislation that provided for the operation of experimental family courts for a two-year period. Under this legislation, the Judicial Council of Virginia designated certain juvenile and domestic relations district courts as family courts, effective January 1, 1990. The Judicial Council also designated a circuit court judge or juvenile and domestic relations district court judge as the judge of each family court.

Designated family courts considered matters within the traditional jurisdiction of juvenile and domestic relations district courts, as well as annulment and affirmation of marriage and divorce cases, otherwise committed to the jurisdiction of circuit courts.[3] However, annulment and affirmation of marriage and divorce cases were not filed in the family courts, but in circuit courts, which in turn referred a certain percentage of such cases to the designated family court.[4]

■ In addition to providing the method by which family courts acquire jurisdiction over certain cases, the enabling legislation also specifically addressed the appellate jurisdiction and procedure to be followed for appeals of the orders of the family court. The General Assembly clearly did not intend that all appeals from family court

---

[3] More than one judge could be designated as a judge of a family court. Orders of a juvenile and domestic relations district court judge sitting in a family court, but not designated as a family court judge, remained orders of the family court; however, an undesignated judge did not have jurisdiction to consider issues of affirmation and annulment of marriage and divorce. Code § 20-96.1(C).

[4] A case referred to a family court would be returned to the circuit court if either party to the case filed a motion objecting to the referral within 21 days of service of the bill of complaint.

orders follow identical appellate procedure. Code § 20-96.1(E) provided that such orders

> shall be taken to either the Court of Appeals as provided in §§ 17-116.05 and 17-116.05:5, or, if not appealable to the Court of Appeals, to the appropriate circuit court as an appeal from a juvenile and domestic relations district court.

Code § 17-116.05:5 provides, in pertinent part, that:

> Any aggrieved party may appeal to the Court of Appeals from:

> 1. Any final judgment, order, or decree of an experimental family court . . . involving:

> . . . .

> b. Cases originating in the experimental family courts involving the custody, visitation or civil support of a child, or · spousal support, or involving the termination of residual parental rights and responsibilities when such cases are heard by a judge sitting as a judge of an experimental family court . . . .

■ The Court of Appeals held that the order in this case came within the provisions of § 17-116.05:5 because all cases pending in the juvenile and domestic relations district court on the date those courts became family courts were "deemed to have 'originated' in what was from that time forward an experimental family court." The Court of Appeals reasoned that to interpret the statute otherwise would produce circumstances in which different appeal routes would be required, based on whether the filing of the cause occurred on the day before or the day after the creation of the family court, "notwithstanding the fact that the same court of record, the experimental family court, simultaneously decided both cases." Such a result, in the view of the Court of Appeals, was untenable and unworkable.

The appellants argue that the word "originating" as used in Code § 17-116.05:5(1)(b) should be given its ordinary and customary meaning, and so applied, appellate jurisdiction of the Court of Appeals over this case is excluded because the case *originated* in the Loudoun County Juvenile and Domestic Relations District Court

in 1988. Hence, appellants contend that, pursuant to § 20-96.1, the appeal from the order of the family court in this case is to the circuit court and is to be considered in the same manner as any other appeal from a juvenile and domestic relations district court. We agree.

■ While the Court of Appeals' concern for the result of a particular interpretation of a statute may be appropriate under some circumstances, it is not appropriate, or correct, here. A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning. *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Neither party claims this statute is ambiguous, and the Court of Appeals did not find any ambiguity. The plain meaning of "originate" is to begin, to start, to arise. *Webster's New International Dictionary* 1592 (3d ed. 1981). We must assume that the General Assembly intended that the word convey its ordinary meaning, and also intended origination in a family court as a condition for invoking the appellate jurisdiction of the Court of Appeals in the types of cases identified in the subsection at issue here.

This interpretation is consistent with the statutory scheme created for the experimental family court. The General Assembly placed other conditions on the Court of Appeals' appellate jurisdiction over family court orders: (1) not all the matters within the jurisdiction of the family court are appealable to the Court of Appeals, only those types of cases specifically identified; and (2) the family court order from which the appeal is taken must be entered by a judge designated as a family court judge, not by a juvenile and domestic relations district court judge only sitting in the family court.

■ Further, the family court experiment is designed to be a limited project that will provide information upon which future decisions regarding further implementation of such an approach to family law litigation can be based. The legislation specifically requires the Judicial Council to make a report based upon the experiment and to make certain comparisons. Code § 20-96.1. For instance, comparisons were to be made in the progress and the results of cases handled in different ways on both the trial and appellate levels. To assist in this endeavor, the legislative scheme itself establishes circumstances that allow comparisons. For example, divorce cases handled by the circuit courts can be compared with those handled by the family court within the same judicial district. In cases

subject to § 17-116.05:5(1)(b), information can be compiled to compare the handling of a custody case under the traditional appellate jurisdiction (a *de novo* appeal followed by an appeal to the Court of Appeals) with the proposed appellate route (an appeal directly to the Court of Appeals).

■ Finally, we do not share the view of the Court of Appeals that giving effect to the plain meaning of the section will have unworkable or untenable results. Prospective legislation often distinguishes its application to similar cases based on an effective date. Those litigants filing a custody case before the creation of the family court anticipated the possibility of an appeal *de novo* to the circuit court; those filing such a case subsequent to the creation of the family court are presumed to have been aware of the appellate jurisdictional requirements. Therefore, the litigants' expectations are fulfilled, not frustrated, by the interpretation we place on the section in question.

■ This case began in 1988. Therefore, it "originated" in the juvenile and domestic relations district court, not the designated family court. The Circuit Court of Loudoun County had jurisdiction to consider the *de novo* appeal of the order of the Loudoun County Family Court as an appeal from a juvenile and domestic relations district court. Code § 20-96.1(E). Accordingly, the judgment of the Court of Appeals will be reversed and the case remanded to the Court of Appeals for further consideration of the substantive errors assigned but not ruled upon.

*Reversed and remanded.*