Present:   All the Justices

COMMONWEALTH OF VIRGINIA

                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 980460              January 8, 1999

E. CHRISTOPHER SANDY

                  FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether a criminal defendant

may enforce the terms of an agreement that he executed with a

Commonwealth's Attorney.

     E. Christopher Sandy was indicted by a Westmoreland

County grand jury for 32 charges of "intentionally and

feloniously issu[ing] . . . fraudulent grain receipts" in

violation of Code § 3.1-722.28.  Sandy's counsel and the

Commonwealth's Attorney, Peggy E. Garland, held plea

negotiations which culminated in the execution of an agreement

signed by Sandy, Garland, and W. R. Sanford, a representative

of the Virginia Department of Agriculture.

     Pursuant to the terms of the agreement, Sandy agreed to

meet with, and answer fully any questions posed to him by the

Commonwealth's Attorney.  The agreement provided that Sandy

would receive "full and complete" transactional immunity for

any and all acts related to the information that he provided

the Commonwealth's Attorney during the meetings.  The

agreement also contained the following paragraphs pertinent to

this proceeding:

"3. That if after the meetings referenced in paragraph (1), Garland is reasonably satisfied that the information provided by Sandy is full and complete, Garland will move the Court to amend seven of the indictments . . . to petty larceny and that she will move the Court to nol pros or dismiss all of the other indictments.

"4. That Garland will recommend to the Court that Sandy be fined Five Hundred Dollars ($500.00) on each of the no more than seven (7) misdemeanor charges for which he is convicted, and be sentenced to six (6) months in jail on each such charge, to run concurrently, all suspended on the condition that the fines be paid."

After the agreement was signed, the Commonwealth's Attorney and her designees had four meetings with Sandy. After the meetings, Sandy's counsel asked the Commonwealth's Attorney whether Sandy had complied with the terms of the agreement. She replied that she had not "made up [her] mind." A few days later, the Commonwealth's Attorney contacted Sandy's counsel by telephone and told him that she was "reluctantly going to go along with the plea agreement." The next day, however, the Commonwealth's Attorney went to the office of Sandy's counsel and stated that she did not intend to honor the agreement.

Subsequently, the Commonwealth's Attorney forwarded a letter to Sandy's counsel which stated in relevant part:

"After I last talked to you, I received information that verifies that [Mr. Sandy] actually lied to me.

"Please remember that the idea to talk to me came from [Mr. Sandy] in the first place, that the assumption was that he would tell me something of

2

value regarding other criminal offenses.  As I've
said before, beyond the granary dealings, he
actually told me less than I told him.  It was only
when I told him what I knew that he gave any
significant information.  That's why I hesitated.
Now, I find that he was not even honest then.

"I cannot abide by the agreement.  I know you may
want to take the issue before the court and you
certainly have that right.  You need to think about
whether you want our arguments to be made in public.
I must say that I feel sorry for [Mr. Sandy].  It
appears he's trying to protect the people who have
hurt him the most."

Sandy filed a petition in the circuit court and requested
that the court enforce the agreement that the Commonwealth had
repudiated.  The Commonwealth's Attorney opposed the petition.
The trial court conducted an <u>ore</u> <u>tenus</u> hearing and held that
there was no agreement between the defendant and the
Commonwealth that could be enforced by the court.

The defendant was subsequently tried by a jury and was
found guilty of intentionally and feloniously issuing
fraudulent grain receipts as charged in seven indictments and
sentenced to serve time in jail and required to pay a fine for
each conviction.  The trial court entered judgments on each
conviction, and the defendant appealed the judgments to the
Court of Appeals.  There, the defendant contended that he had
a contractual relationship with the Commonwealth, that the
Commonwealth's Attorney could not unilaterally withdraw her
acceptance of the agreement, and that he was entitled to

3

specific performance of the agreement.  A panel of the Court of Appeals agreed with the defendant, reversed the judgments, and ordered specific performance of the agreement.  Sandy v. Commonwealth, 25 Va. App. 1, 486 S.E.2d 102 (1997).  The Court of Appeals, upon a rehearing en banc, agreed with the panel, Sandy v. Commonwealth, 26 Va. App. 724, 496 S.E.2d 167 (1998), and the Commonwealth appeals.

The Commonwealth argues that the Court of Appeals erred in holding that the Commonwealth's Attorney had breached the agreement with the defendant.  Continuing, the Commonwealth states that the agreement is without constitutional significance and is unenforceable because the trial court had not approved any plea agreement.  Responding, the defendant states that even though "there is no plea agreement and . . . one never existed," he executed a "cooperation agreement" with the Commonwealth, he fully complied with the so-called cooperation agreement and, hence, he is entitled to specific performance of that agreement.

First, we hold that the Court of Appeals erred in concluding that the defendant and the Commonwealth's Attorney entered into a plea agreement in accordance with Rule 3A:8(c)(1)(C)(2).  Sandy, 26 Va. App. at 725, 496 S.E.2d at 168.  This Rule, which governs plea agreements in this Commonwealth in criminal proceedings, states in relevant part

4

that "[i]f a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court." This Rule also requires that the circuit court approve the plea agreement.  The Commonwealth correctly points out, and the defendant concedes, that the agreement in this case was never approved by the circuit court as required by Rule 3A:8.

In Mabry v. Johnson, 467 U.S. 504 (1984), the United States Supreme Court considered whether a defendant, who had accepted a prosecutor's proposed plea bargain, has a constitutional right to have that plea bargain specifically enforced.  Answering that issue in the negative, the Supreme Court stated:

> "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.  It is the ensuing guilty plea that implicates the Constitution.  Only after [the defendant] pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of [the defendant's] liberty at issue here."  Id. at 507-08 (footnotes omitted).

Here, just as in Mabry, the agreement at issue has no constitutional significance because it was not embodied in the judgment of a court.

5

We hold that a Commonwealth's Attorney may withdraw from a proposed plea agreement at any time before the actual entry of a guilty plea by a defendant or any other change of position by the defendant resulting in prejudice to him because of reliance upon the agreement. See Shields v. State, 374 A.2d 816, 820 (Del.), cert. denied, 434 U.S. 893 (1977); State v. Edwards, 279 N.W.2d 9, 11 (Iowa 1979); State v. Collins, 265 S.E.2d 172, 176 (N.C. 1980); State v. Wheeler, 631 P.2d 376, 378-79 (Wash. 1981). Absent judicial approval or prejudice to a criminal defendant, a proposed plea agreement cannot be binding upon the Commonwealth because the defendant has suffered no harm, and the defendant is free to reject the proposed agreement before it is submitted to a court in spite of any prejudice that the Commonwealth may have incurred. Applying this rule, we hold that the Commonwealth's Attorney was entitled to withdraw from the proposed plea agreement she had executed with Sandy because the evidence of record reveals that he was not prejudiced. When asked by the circuit court to identify any prejudice that the defendant suffered because of the Commonwealth's Attorney's withdrawal from the proposed plea agreement, the defendant's counsel was unable to do so.

6

Accordingly, we will reverse the judgment of the Court of Appeals, and we will reinstate the judgments of the circuit court.

Reversed and final judgment.