# CIRCUIT COURT OF THE CITY OF ROANOKE

Corey Anthony Payne

v.

E. E. Wright, Warden,
Brunswick Correction Center

December 14, 2001

Case No. CL01000613

BY JUDGE CLIFFORD R. WECKSTEIN

In his counsel-prepared petition for habeas corpus, Corey Anthony Payne, No. 219665, attacks his 1993 murder conviction on two grounds:

1. He was a juvenile when the crime was committed. Because the juvenile and domestic relations district court did not comply with statutory requirements to notify his father about proceedings in juvenile court before his case was transferred to circuit court, he says, his conviction is void.

2. His attorney's representation was constitutionally inadequate, he says, because she allowed him to plead guilty to second degree murder under a plea agreement that was not in writing, and without being sure that he adequately understood the plea he was entering.

### The "Baker Claim"

Less than three months after Payne filed his petition, the Supreme Court of Virginia decided *Nelson v. Warden*, 262 Va. 276, 552 S.E. 2d 73 (2001), demolishing the legal underpinnings of his first claim. This was a "Baker claim," arising from the decision in *Commonwealth v. Baker*, 258 Va. 1, 516 S.E.2d 219 (1999) (*per curiam*), *affirming Baker v. Commonwealth*, 28 Va. App. 306, 504 S.E.2d 394 (1998). Under *Baker* and its progeny, failure to comply with parental notification statutes in juvenile court rendered void

subsequent criminal convictions in circuit court. *Nelson* changed the legal landscape.

In *Nelson*, the Court held that "the statutory requirement of notice to parents [of transfer proceedings in the juvenile court] was not jurisdictional but procedural in nature, that a failure to notify parents could be waived by failure to object, and, correspondingly, that a failure to comply with the requirements rendered subsequent convictions voidable but not void." *Nelson*, 262 Va. at 285. The defendant in *Baker* "preserved the error both by filing in circuit court a motion to dismiss before he was indicted and by timely raising the issue on appeal, [so] the Court of Appeals was bound to declare void what theretofore had been merely voidable." *Nelson*, 262 Va. at 285. "In contrast," Chief Justice Carrico's majority opinion noted, "Nelson did not preserve the error in the juvenile court's failure to give his father notice and did not raise the issue until he filed his petition for a writ of habeas corpus. ..." *Id.* 262 Va 276. This "failure to raise the issue in a timely manner constitutes a waiver of the error and results in the dismissal of his petition." *Id.* 262 Va 276.

Like Nelson, Payne waited until he filed a habeas petition to assert lack of proper parental notice. Though he exercised his right to circuit court review of the transfer decision, he did not raise this issue in the transfer appeal. Once the transfer appeal was decided, he was indicted, and still did not raise the issue or object to the jurisdiction of the circuit court. Judge Kenneth E. Trabue presided over Payne's trial, accepted his eventual guilty plea, and sentenced him. (Judge Trabue has since retired.) At the beginning of the trial, Judge Trabue asked, "Does the defendant have any objection or any reason to state why this Court would not have jurisdiction over the Defendant?" His lawyer answered, "No, sir." The Commonwealth's Attorney's answer to the question was the same, and Payne simply responded, "Yes, Sir," when the court asked if he was ready for trial. He did not appeal the circuit court's judgment, unlike Baker, who "timely raised the issue on appeal." *Nelson*, 262 Va. at 285. No hearing is necessary for the court to determine that *Nelson* mandates dismissal of this claim.

### *The Ineffective Assistance Claim*

No hearing is needed for the court to find that Payne's second claim, ineffective assistance of counsel, also fails. His petition, and the trial record, demonstrate that he cannot not satisfy the "prejudice" requirement of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Furthermore, his conclusory statements about the adequacy of the representation he received contradict what he told the court when he pleaded

guilty. Since the petition gives no reason that he should be allowed to contradict his previous statements, he is bound by them.

Payne's negotiated guilty plea followed an aborted jury trial. He had been indicted for first degree murder, and on October 18, 1993, a jury began to hear the Commonwealth's case against him. During the lunch break, a juror called her mother, who in turn phoned the courthouse and spoke to a deputy sheriff. This led to an interview in open court, in which the juror expressed misgivings about whether she could render a fair verdict. The defendant's attorney moved for a mistrial and, after consulting privately with Payne, declined to proceed with an eleven-member jury. The court granted the mistrial motion and discharged the jury, and the parties arranged to start over on another day. They also spent much of the afternoon negotiating. (Trial transcript, pp. 80-97; October 18 hearing transcript, pp. 5-6.)

Shortly before 5:00 that afternoon, Payne pleaded guilty to second degree murder. The Commonwealth did not oppose his plea. Sworn to answer truthfully, he then told the court that, other than the Commonwealth's commitment not to oppose his entry of a guilty plea to this lesser-included offense, he had no agreement with the Commonwealth. He understood that the maximum punishment that could have been imposed for first degree murder was life in prison, he said, and that the difference between first and second degree murder is premeditation. He agreed with the court that "all they have to do for second [degree murder] is to prove that you killed the victim and that you did it willfully and deliberately." The judge asked if he was "in a position to claim self-defense in this case?" "No, sir," Payne answered. (October 18 hearing transcript, pp. 4-7.)

When Judge Trabue asked about the maximum punishment for second degree murder, he accurately answered "five to twenty." He told the court that there had been no promises of leniency, except for the agreement not to oppose his plea, and denied that any other promises had been made to him. The decision to change his plea was his, not his attorney's, he told Judge Trabue, and he did not feel a need to discuss his change of plea with his mother, or anyone else, before the court decided whether to accept the plea. When asked if he thought he had "had all the time you feel is appropriate to talk with your mother and your grandparents about your case and they pretty well know what the facts are and what your position in the case is," the defendant replied, "Yes, sir." (His grandma might be surprised by his guilty plea, he said, but he did not think his mom would be.) (*Id.*, pp. 8-10.)

"So they can argue for up to twenty years in the penitentiary?" the trial judge asked. "That's right," Payne replied. "If you were to be given the maximum punishment for second degree murder," the judge asked, "would the Commonwealth's Attorney have breached any agreement that they made

with you or your Attorney to recommend anything less?" The defendant answered, "No, sir." (*Id.*, pp. 10-11.)

To a question from the court, the Chief Assistant Commonwealth's Attorney responded that she had told Payne's attorney that she would seek a twenty-year sentence; she had not told the defense attorney, she answered another question from the court, that the Commonwealth would argue for "anything less." The defendant's attorney acknowledged the truth of these statements. (*Id.*, pp. 11-12.)

Payne pronounced himself fully satisfied with the services of his attorney. During a lengthy plea colloquy, the court reviewed with the defendant the rights he relinquished by pleading guilty, and heard from Payne that he understood these rights, and that no one connected with the case had threatened him or forced him to enter his plea. At the end of the plea colloquy, the court asked whether the defendant contested firing the shot that killed the decedent; his attorney said he did not. The judge's next question was addressed to Payne: "All right, do you understand the questions that I have asked you now?" Payne responded, "I understand, sir." (*Id.*, pp. 6, 12-13.) In accepting the plea, the court made findings of fact, telling Payne that "having questioned you on your plea of guilty to second degree murder, the Court is satisfied from the answers you have given and from a summary of the evidence that I heard this morning through the opening statements and from the statement that [his attorney] just made on your behalf, that your plea has been freely and voluntarily entered, that you fully understand the nature and the consequence of the charge of second degree murder against you." (*Id.*, p. 13.)

At the end of the hearing, the court found "that the Defendant has been present in person throughout each stage of the proceeding today and has been capably represented by Counsel, who has also been present," and then asked, "All right, do you understand what is happening now?" Payne answered, "Yes, sir." (*Id.*, p. 14.) After a presentence investigation and report, and a sentencing hearing held on December 14, 1993, the court sentenced the defendant to serve 20 years in prison.

Under *Strickland v. Washington,* a defendant who claims ineffective assistance of counsel must prove two things: (i) that counsel's performance was deficient (that is, not the result of reasonable professional judgment and outside the wide range of professionally competent assistance); *and* (ii) that, as a result, he actually was prejudiced. *Strickland,* 466 U.S. at 687 and 690.

To establish prejudice he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,*

466 U.S. at 694. *See Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Moore v. Hinkle*, 259 Va. 479, 487, 527 S.E.2d 419 (2000). A court considering an ineffective assistance claim does not have to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. I follow that course here.

Payne received what he had bargained for. Avoiding the possibility that he would be convicted of first degree murder, a crime for which he could have received a sentence of life imprisonment (with a statutory minimum of twenty years), he was convicted of a crime with a statutory range of five to twenty years, and sentenced within that range. He received a sentence he had acknowledged he might receive and that he had said would not breach his agreement with the Commonwealth. When the court found him guilty of second degree murder, his agreement was "embodied in the judgment of [the] court." *See Commonwealth v. Sandy*, 257 Va. 87, 91, 509 S.E.2d 492 (1999). There is no hint in his petition that the Commonwealth or the court failed to comply with his agreement. What Judge (now Justice) Koontz wrote in an opinion of the Court of Appeals applies in this case. Payne's "substantial rights were not implicated by the fact that the plea agreement was not in writing. ... The purpose of Rule 3A:8(c)(2), a procedural rule, is to ensure that plea agreements are fully disclosed to both the trial court and the defendant. That purpose was fully accomplished here. The record shows that the terms of the plea agreement were fully presented to the trial court and that [Payne] acknowledged that the oral presentation of the plea agreement was consistent with his understanding of the agreement. Thus, [Payne] was convicted and sentenced consistent with his understanding of the agreement as expressly stated on the record." *Hairston v. Commonwealth*, 16 Va. App. 941, 944-45, 434 S.E.2d 350 (1993); *accord, Morrissey v. Virginia State Bar*, 248 Va. 334, 341, 448 S.E.2d 615 (1994).[1]

---

[1]    Rule 3A:8(c) is titled "Plea agreement procedure." While Subsection (2) requires plea agreements in every felony case to be in writing, Subsection (1) enumerates three specific types of plea agreements: Those in which the Commonwealth and defendant agree on the "appropriate disposition" of the case; those in which the Commonwealth agrees to discontinue or dismiss charges; and those in which, without binding the court, the Commonwealth agrees that it will recommend, or not oppose the defendant's request for, a particular sentence. While a commitment that the Commonwealth will not oppose the defendant's entry of a guilty plea to second degree murder does not seem to fit within any of those categories, for present

Furthermore, "the truth and accuracy of representations made by an accused as to the adequacy of his court-appointed counsel and the voluntariness of his guilty plea will be considered conclusively established by the trial proceedings, unless the prisoner offers a valid reason why he should be permitted to controvert his prior statements. ... if the allegations of the habeas petition do not set forth such a valid reason, no evidentiary hearing should be permitted. ... In other words, a convict may question by habeas corpus the adequacy of counsel and the voluntariness of a guilty plea only when he alleges and proves a valid reason why he should be permitted to disavow his prior, contrary declarations made at the trial." *Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885 (1981). The conclusory statements in Payne's petition suggest no reason, valid or otherwise, that he should be permitted to contradict what he declared to Judge Trabue. His own words on the record under oath when he pleaded guilty conclusively negate his newly-made claim that his attorney failed to give him an adequate understanding of his plea. Likewise, what he himself said conclusively establishes his unequivocal approval of the quality of his lawyer's services to him.

The "bottom line" on the claim of ineffective assistance of counsel is this: When the court considers as true all material facts alleged in the petition, all facts impliedly alleged, and all reasonable inferences that can be drawn from those facts, Payne "has made no showing that the justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance." *Strickland*, 466 U.S. at 700.

I incorporate in the record of this habeas case the transcripts and all other parts of the record in the underlying criminal case in this court, *Commonwealth v. Corey Anthony Payne*, No. CR93-1278. In reaching my decision to dismiss the petition without hearing, I have considered that record, accepted the truth of every factual statement in the habeas petition (without accepting the pleader's legal conclusions), and considered the pleadings and arguments of counsel.

---

purposes I will nevertheless assume that under the Rule Payne's agreement should have been reduced to writing.