COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued at Salem, Virginia


AVERY MARTEZ LAMPKINS
                                                        OPINION BY
v.        Record No. 0253-04-3                  JUDGE ROBERT P. FRANK
                                                        JANUARY 18, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
Charles M. Stone, Judge

John W. Swezey for appellant.

Richard B. Smith, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


Avery Martez Lampkins (appellant), a juvenile, was convicted by a jury of first-degree

murder in violation of Code § 18.2-32.  On appeal, he contends the trial court erred in finding that

1) an immunity agreement between the Commonwealth and appellant was not binding so as to bar

this prosecution, and 2) the circuit court had subject matter jurisdiction.  For the reasons stated, we

reverse the judgment of the trial court.

BACKGROUND

On May 15, 2002 Delvin Hairston was killed during a drive-by shooting.  On May 20,

2002 appellant gave a statement to police implicating himself in the shooting.  On November 19,

2002 appellant, his parents, the Commonwealth's Attorney, and the lead investigating officer

signed a "Contingency Agreement for Consideration" granting immunity to appellant in

exchange for his cooperation in providing substantial assistance in the investigation and

prosecution of other named participants in the shooting.  No charges were pending against

appellant at the time the agreement was entered.  The relevant portion of the agreement provided

that the Commonwealth would "consider this matter closed and not file charges against or prosecute Avery Lampkins" if he cooperated and assisted the Commonwealth.

After signing the agreement, appellant appeared each time he was summoned to court by the Commonwealth. Lead Investigator Johnson testified that after the agreement was signed the appellant was "tough to talk to." Appellant would appear to get upset when he had to repeat facts which he had already communicated to the investigator. On two occasions appellant slumped down in his chair and his mother had to tell him to sit up and answer questions. Although Johnson testified that appellant's statements remained consistent throughout the investigation, Johnson felt as though appellant did not cooperate.[1]

On February 18, 2003, the Commonwealth informed appellant that he was not being truthful and he was going to be charged with Hairston's murder. Appellant suggested the other witnesses in the case take a polygraph test. Instead, the Commonwealth requested that appellant take a polygraph test, and appellant agreed. The record reveals only that appellant got angry and walked out of the police station after submitting to the test. The record does not disclose the results of the test.

On March 26, 2003, the Martinsville police obtained petitions in the juvenile and domestic relations district court against appellant, age 17, for charges related to the murder of Delvin Hairston in violation of Code § 18.2-32. Appellant filed a Motion to Dismiss and Require Specific Performance of the Immunity Agreement. The juvenile court concluded that the appellant complied with the agreement, the Commonwealth's Attorney is bound by the

---

[1] In its Objection to Motion to Dismiss and Quash the Indictment the Commonwealth references many occasions when appellant allegedly breached the agreement. However, the Commonwealth presented no evidence in the trial court to prove such allegations. See Graves v. Graves, 4 Va. App. 326, 332, 357 S.E.2d 554, 558 (1987) ("Mere representations by counsel are not evidence.").

agreement, and the agreement shall be specifically enforced against the Commonwealth. The court dismissed all charges.

The Commonwealth obtained direct indictments in the circuit court against appellant for Hairston's murder. Appellant filed a Motion to Quash Indictment and Motion to Dismiss and Require Specific Performance of the Immunity Agreement. After taking evidence and hearing arguments of counsel, the court overruled both motions. Appellant was tried and convicted of first-degree murder of Hairston.

## ANALYSIS

## JURISDICTION

Appellant contends the circuit court had no subject matter jurisdiction to try him for murder since he was not afforded a transfer hearing in juvenile court. Essentially, appellant contends that the Commonwealth had no authority to seek a direct indictment for murder after the juvenile and domestic relations district court dismissed the petitions due to the Commonwealth's failure to comply with the immunity agreement. Under Code § 16.1-269.1(B), appellant argues he had a right to a preliminary hearing in juvenile and domestic relations district court.[2] He concludes that since he was not afforded a transfer hearing under Code § 16.1-269.1(A) or a preliminary hearing under Code § 16.1-269.1(B) on the murder charge, the circuit court had no subject matter jurisdiction. We disagree.

To the extent appellant argues he was deprived of due process for not being allowed a preliminary hearing, he is barred from pursuing this argument. Appellant, by filing his motion to dismiss, sought to have the petitions dismissed, not on the merits of the case, but because the Commonwealth was barred from prosecuting the charges. Appellant was successful in that

---

[2] Code § 16.1-269.1(B) states: "The juvenile court shall conduct a preliminary hearing whenever a juvenile fourteen years of age or older is charged with murder in violation of §§ 18.2-31, 18.2-32 or § 18.2-40, or aggravated malicious wounding in violation of § 18.2-51.2."

motion in the juvenile and domestic relations district court, and he now complains the results he requested deprived him of due process. "No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate -- to invite error, as [appellant] admittedly did here, and then to take advantage of the situation created by his own wrong." Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988).

We must review the various statutes dealing with transferring juveniles to the circuit court to be tried as adults to determine the rights of the losing party in these transfer proceedings.

Either the juvenile or the Commonwealth may appeal an adverse transfer decision. If the juvenile and domestic relations district court transfers the charges to the circuit court, the juvenile may appeal. If the juvenile court fails to transfer and retains jurisdiction of a juvenile fourteen years of age or older, the Commonwealth can appeal as well. Code § 16.1-269.3. However, there are other situations where the Commonwealth may seek a direct indictment upon an adverse ruling. Code § 16.1-269.1(D) states, in part, that where the juvenile is charged with certain specified violent offenses:

> If the court does not find probable cause to believe that the juvenile has committed the violent juvenile felony as charged in the petition or warrant or *if the petition or warrant is terminated by dismissal in the juvenile court*, the attorney for the Commonwealth may seek a direct indictment in the circuit court. If the petition or warrant is terminated by nolle prosequi in the juvenile court, the attorney for the Commonwealth may seek an indictment only after a preliminary hearing in juvenile court.

(Emphasis added).

Under Code § 16.1-269.1(D), there are two circumstances where the Commonwealth is not required to appeal an adverse decision but can seek a direct indictment: (1) where the juvenile court does not find probable cause; or (2) where the petition or warrant is terminated by dismissal in the juvenile court.

- 4 -

Appellant argues we must interpret the language of Code § 16.1-269.1(D) in context of the mandates of subsections (B) and (C) requiring a preliminary hearing. Appellant concludes that the language of Code § 16.1-269.1(D) only applies after the preliminary hearing has been conducted and the result is a dismissal of the charges. Again, we disagree. This argument ignores the plain language of the statute. "A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning." Loudoun County Dep't of Social Servs. v. Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993). "Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).

The operative language is in the disjunctive. The Commonwealth may seek a direct indictment where the juvenile court finds no probable cause *or* the petition or warrant is terminated by dismissal. Generally, phrases separated by a comma and the disjunctive "or" are independent. Smoot v. Commonwealth, 37 Va. App. 495, 501, 559 S.E.2d 409, 412 (2002) (citing Ruben v. Secretary of HHS, 22 Cl. Ct. 264, 266 (1991) (finding that the word "or" connects two parts of a sentence, "but disconnects their meaning")). Appellant invites us to read the two phrases in the conjunctive, such that the dismissal language is modified by the first phrase which implicitly requires a preliminary hearing. We conclude that each of the two phrases is independent of each other.

Clearly, the first circumstance requires a preliminary hearing in order for the juvenile court to find no probable cause. However, the second circumstance does not require a preliminary hearing, but only a dismissal. As in the case at bar, there can be a number of situations where the petition may be dismissed on procedural grounds without a preliminary hearing.

If appellant's analysis is correct, the second condition would be superfluous and the disjunctive language irrelevant. If the court found no probable cause, then the charges would be dismissed. We must conclude that the dismissal language of the second condition has an application different from the first condition. "We must assume that the legislature did not intend to do a vain and useless thing." Williams v. Commonwealth, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949).

> "It is a well established rule of construction that a statute ought to be interpreted in such a manner that it may have effect, and not found to be vain and elusive. Every interpretation that leads to an absurdity ought to be rejected. It is our duty to give effect to the wording of the statute, and allow the legislative intention to be followed."

Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (*en banc*) (quoting McFadden v. McNorton, 193 Va. 455, 461, 69 S.E.2d 445, 449 (1952)). Thus, we conclude that the language of Code § 16.1-269(D) does not mandate a preliminary hearing prior to a dismissal of the charges.

Next, appellant argues even if the statute allowed a direct indictment, the circuit court must "review the record from Juvenile & Domestic Relations District Court and advise the Commonwealth that it may seek an indictment." Code § 16.1-269.6(B), which creates a procedure for either the juvenile or the Commonwealth to appeal a transfer decision, requires the circuit court:

> to examine all such papers, reports and orders and conduct a hearing to take further evidence on the issue of transfer, to determine if there has been substantial compliance with subsection A of § 16.1-269.1, but without redetermining whether the juvenile court had sufficient evidence to find probable cause; and (ii) enter an order either remanding the case to the juvenile court or advising the attorney for the Commonwealth that he may seek an indictment.

By its own terms, this provision only applies when either party appeals a *transfer* decision. In the instant case, there was no transfer decision. The charges were dismissed because the Commonwealth did not honor the immunity agreement. Additionally, Code § 16.1-269.1(D), the statute governing dismissed charges, contains no language requiring the circuit court to examine the "papers, reports and orders," nor to enter an order "advising the attorney for the Commonwealth that he may seek an indictment." The plain language of the statute does not require the circuit court to "review the record from Juvenile & Domestic Relations District Court and advise the Commonwealth that it may seek an indictment." See Etzold, 245 Va. at 85, 425 S.E.2d at 802.

Since we determine that Code § 16.1-269.1(D) authorizes the Commonwealth to seek a direct indictment, thus not raising any subject matter jurisdictional issues, we need not address Code § 16.1-269.1(E), which states in part:

> An indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age. If an indictment is terminated by nolle prosequi, the Commonwealth may reinstate the proceeding by seeking a subsequent indictment. (1994, cc. 859, 949; 1996 cc. 755, 914; 1997, c. 862).

We also need not address the distinction set forth in Nelson v. Warden of the Keen Mt. Corr. Ctr., 262 Va. 276, 552 S.E.2d 73 (2001), between subject matter jurisdiction and the authority of the court to exercise jurisdiction.

IMMUNITY AGREEMENT

Appellant argued below that the immunity agreement is binding on the Commonwealth and it affords appellant a bar to prosecution. The Commonwealth responded that the appellant breached the agreement by not cooperating, and further, that the Commonwealth was not bound to fulfill its obligation under the agreement because the appellant suffered no prejudice in relying upon the agreement. The trial court concluded:

[T]hat something came out, either from the witnesses in those cases or maybe they wouldn't testify, since maybe the investigation produced something that suggested to the Commonwealth that the facts were not as stated by Mr. Lampkins and therefore, there is some suspicion about whether or not he is being truthful; and thus this issue has arisen. Of course there are situations where witnesses agree to tell the truth and then it is later determined that they are not telling the truth. And that is usually done by some kind of concrete evidence, some kind of factual situation that can't be explained away. That doesn't seem to be the case here. It seems like here, it is -- unless I am misunderstanding the Commonwealth's position, you are withdrawing from the agreement because you feel like the polygraph has disclosed that he has been untruthful. And that may or may not be so. I am certainly not making any judgment on that. But I don't think that is sufficient enough to void the agreement; because really you are asking me to determine the credibility of the statement. And of course, I don't even know what the statement is. So I can't find that he has violated the agreement because he has been untruthful -- whether he has, in fact, been untruthful or not. The real issue it seems to me, is whether or not the Commonwealth is bound by the agreement at this point in the proceedings.

\* \* \* \* \* \* \*

It is not whether or not the defendant has or has not violated the agreement with the Commonwealth; but whether or not the Commonwealth is bound by the agreement.

The trial court concluded that even if appellant did not breach the agreement, the Commonwealth was not bound by the agreement unless appellant could show he was prejudiced. The trial court relied upon the Supreme Court's decision in Commonwealth v. Sandy, 257 Va. 87, 509 S.E.2d 492 (1999), and concluded:

And the Supreme Court reversed that, basically saying that the prosecution can withdraw from an agreement under two circumstances. Number one; if there has not actually been a guilty plea entered by the defendant; and number two: if there has been no prejudice to the defendant.

\* \* \* \* \* \* \*

So under the Sandy case, the only way that the defendant can enforce the agreement is if he has been prejudiced in some way by it. And I really couldn't come up with any prejudice that exists. It

- 8 -

seems like to me he is not any worse off than he was before the agreement.

On appeal, appellant relies on Commonwealth v. Sluss, 14 Va. App. 601, 419 S.E.2d 263 (1992), to support his position that he has a contractual right, as well as a due process right, to receive a benefit from the immunity agreement. The Commonwealth, he argues, bears the burden of proving that he breached the agreement. He asserts that because the trial court concluded that there was no breach, appellant should receive the benefit of the agreement. For the reasons that follow, we agree that appellant should receive immunity.

Sandy does not overrule Sluss. Sandy addresses only plea agreements between the accused and the Commonwealth. A "Commonwealth's Attorney may withdraw from a proposed plea agreement at any time before the actual entry of a guilty plea by a defendant or any other change of position by the defendant resulting in prejudice to him because of reliance upon the agreement." Sandy, 257 Va. at 91, 509 S.E.2d at 494. Sandy is limited to circumstances where the Commonwealth enters into an agreement after charges have been filed and in anticipation of the defendant entering a guilty plea, a scenario not involved in this case. Here, appellant had not been charged when he and the Commonwealth entered into the agreement. Further, the parties in Sandy agreed that the plea agreement, by statute, was not a binding contract because the court had not yet accepted it. The issue in Sandy is governed by the law of plea agreements and Rule 3A:8.[3] Sandy does not address Sluss.

---

[3] Rule 3A:8(c), as it applies to Sandy, states in relevant part:

> (2) If a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court. . . . If the agreement is of the type specified in subdivision (c)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a presentence report. If the agreement is of the type

Sluss, on the other hand, addresses cooperation/immunity agreements.  Although no Virginia decision has expressly authorized the use of cooperation/immunity agreements, such cooperation/immunity agreements contravene no constitutional or statutory provision.  Sluss, 14 Va. App. at 604, 419 S.E.2d at 265.  Such agreements are contractual in nature and, thus, are subject to principles of contract law.  Id.  To the extent that the contract between the appellant and the Commonwealth was not a plea agreement as contemplated by Rule 3A:8, Sluss governs resolution of the issues presented here:

> [P]rosecutors may enter into cooperation/immunity agreements whereby the government promises an individual immunity from prosecution, or from use of, and/or derivative use of, statements the witness makes to the government.  These agreements are usually made in consideration for the individual's cooperation in providing information concerning criminal activity.
>
> . . . [C]ooperation/immunity agreements [also] are subject to due process safeguards which require that the government strictly adhere to the terms of its agreement.

Id. (citations omitted).

The Commonwealth bears the """"burden of establishing a breach by the defendant [of the cooperation/immunity agreement] if the agreement is to be considered unenforceable."""  Id. at 606, 419 S.E.2d at 266 (quoting United States v. Johnson, 861 F.2d 510, 513 (8th Cir. 1988) (quoting United States v. Brown, 801 F.2d 352, 355 (8th Cir. 1986))).  If appellant did not breach

---

specified in subdivision (c)(1)(B), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw his plea, unless the Commonwealth fails to perform its part of the agreement.  In that event, the defendant shall have the right to withdraw his plea.

(3) If the court accepts the plea agreement, the court shall inform the defendant that it will embody in its judgment and sentence the disposition provided for in the agreement.

the cooperation/immunity agreement, due process requires that the government provide him with the benefit of his bargain. Id.

The record shows the trial court concluded that the Commonwealth did not meet its burden of proving appellant breached the immunity agreement. In fact, because of its reliance on Sandy, the trial court found that it was not relevant whether or not appellant breached the agreement. We conclude that under the principles articulated in Sluss, the Commonwealth did not meet its burden of showing the appellant breached the agreement.

The Commonwealth argues that cooperation/immunity agreements are analogous to plea agreements. As such, the Commonwealth suggests that pursuant to Sandy, the appellant must show prejudice in relying upon the agreement.

A plea agreement has no constitutional significance until it is embodied in the judgment of a court. Sandy, 257 Va. at 91, 509 S.E.2d at 494. The Court in Sandy, quoting the United States Supreme Court in Mabry v. Johnson, 467 U.S. 504 (1984), determined that a defendant, who had accepted a prosecutor's proposed plea bargain, did not have a constitutional right to have that plea bargain specifically enforced.

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after [the defendant] pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of [the defendant's] liberty at issue here. [Mabry, 467 U.S.] at 507-08 (footnotes omitted).

Sandy, 257 Va. at 91, 509 S.E.2d at 494. Absent judicial approval, a proposed plea agreement cannot be binding on the Commonwealth because the defendant has suffered no harm. Id. at 92, 509 S.E.2d at 494.

In <u>Plaster v. United States</u>, 789 F.2d 289 (4th Cir. 1986), the Fourth Circuit agreed with the district court's analysis that plea agreements and immunity agreements "differ markedly" and quoted the district court with approval:

> "[A] grant of immunity is different from a plea bargain in that it can never be formalized by a plea of guilty. On the contrary, the very nature of the agreement is the promise on the part of the government to do nothing. In addition, a grant of immunity differs from a plea agreement in that it in no way involves court approval. In the case of a plea agreement, the court in essence executes the agreement by accepting the plea of guilty. In the case of a grant of immunity, however, only two parties are involved. The government alone makes a decision not to prosecute in exchange for testimony which will, hopefully, lead to a greater number of indictments or convictions. The most that one granted immunity can do is to agree to testify and then await the call of the government."

<u>Id.</u> at 293. Thus, although we recognize that cooperation/immunity agreements can be somewhat analogous to plea agreements, we are not persuaded by the Commonwealth's argument that the law of plea agreements controls the issue presented here.

We conclude that the government bore the burden of establishing a breach by the appellant. Because the Commonwealth did not prove a breach of the cooperation/immunity agreement, due process requires that the government provide him with the benefit of his bargain, which is immunity from prosecution.

CONCLUSION

For the foregoing reasons, we conclude that the circuit court properly retained jurisdiction of this case. We further conclude that pursuant to the cooperation/immunity agreement, the Commonwealth is barred from prosecuting this case and the indictments are dismissed.

<u>Reversed and dismissed.</u>