HUMPHREYS, Judge.
Simon Vaughn Murphy (“Murphy”) appeals his conviction of possession with intent to distribute more than five pounds of marijuana, in violation of Code § 18.2-248.1. He argues that he was immune from prosecution by virtue of his testimony as a Commonwealth’s witness. For the reasons that follow, we disagree and affirm Murphy’s conviction.
BACKGROUND
The facts in this case are undisputed. On March 10, 2005, Murphy and his passenger Omar Dickson (“Dickson”) arrived at the north toll plaza of the Chesapeake Bay Bridge Tunnel in Northampton County. A state trooper at the toll plaza smelled marijuana in the vehicle, ordered Murphy to pull over, conducted a search of the vehicle, and found approximately sixteen pounds of marijuana inside.[1]
The Commonwealth charged Murphy and Dickson with possession with intent to distribute more than five pounds of marijuana and transporting more than five pounds of marijua *538 na into the Commonwealth, in violation of Code §§ 18.2-248.1 and 18.2-248.01, respectively.
The Commonwealth viewed Dickson as being more culpable than Murphy and, thus, entered into an agreement with Murphy. Under the agreement, Murphy would testify against Dickson at both Dickson’s preliminary hearing and trial. In exchange, the Commonwealth would nolle prosequi the transportation charge, which carried a mandatory minimum sentence of three years. Murphy complied with the terms of the agreement, and testified for the Commonwealth at Dickson’s preliminary hearing. Notwithstanding his agreement with the Commonwealth, Murphy subsequently moved to dismiss both charges, arguing that his testimony as a Commonwealth’s witness had earned him transactional immunity under Code § 18.2-262.
The trial court heard arguments on the motion on June 16, 2006. At this time, Murphy stipulated the existence of an agreement and its terms, but at the time of Murphy’s testimony at Dickson’s preliminary hearing, neither party had reduced the agreement to writing nor had it been accepted by the trial court. On July 17, 2006, the trial court denied the motion, and held that Murphy had waived any right of immunity he may have had under the statute by entering into the agreement with the Commonwealth.[2]
After the trial court denied the motion, the parties reduced the original agreement to writing with the additional proviso that Murphy would be permitted to appeal the immunity issue and submitted it to the trial court.[3] After the trial court *539 approved the plea agreement, Murphy entered a conditional guilty plea pursuant to Code § 19.2-254. The Commonwealth then requested and received an order to nolle prosequi the transportation charge, pursuant to the plea agreement. The trial court convicted Murphy of possession with intent to distribute more than five pounds of marijuana. This appeal followed.
ANALYSIS
Murphy argues on appeal, as he did in the trial court, that he acquired transactional immunity to both charges by virtue of his testimony as a Commonwealth’s witness, thereby barring his prosecution on either offense. First, he argues that Code § 18.2-262 applied to this case because it did not require his testimony to be “compelled” in order to grant him immunity. Next, he argues that he did not waive immunity under Code § 18.2-262 by entering into the plea agreement with the Commonwealth.
The Commonwealth responds that Code § 18.2-262 is inapplicable because Murphy was not “compelled” to testify and that in any event, Murphy waived that immunity by entering into the plea agreement with the Commonwealth. Specifically, the Commonwealth notes that Murphy voluntarily entered into a bargained-for agreement, where Murphy agreed to testify against his codefendant, and plead guilty to possession of marijuana with intent to distribute. In exchange, the Commonwealth agreed to nolle prosequi the transportation charge. Thus, the Commonwealth argues that Murphy implicitly bargained away his right to immunity by agreeing to the terms of the plea agreement. Furthermore, the Commonwealth argues that this waiver need not be an express waiver, because the right involved was not constitutional, but statutory.
*540 Initially and contrary to the assertion of both the Attorney General and the concurrence, the statutory transactional immunity afforded by Code § 18.2-262 does not require that testimony be “compelled” as is the case with the more narrow protection provided by the United States Constitution. See Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972) (holding that the most important exemption from testimonial duty is “the Fifth Amendment privilege against compulsory self-incrimination”). In contrast, unlike the Self-Incrimination Clause of the Fifth Amendment, Code § 18.2-262, by its plain language, contains no compulsion element and instead conveys transactional immunity for incriminating testimony “when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury.” We must presume the General Assembly chose its words with care and, “we are not free to add [to] language, nor to ignore language, contained in statutes.” BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (quoting SIGNAL Corp. v. Keane Federal Sys., Inc., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)).
Nonetheless, we do agree with the Commonwealth’s remaining argument. We note that “[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.” Schneckloth v. Bustamonte, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052-53, 36 L.Ed.2d 854 (1973). “In contrast, a waiver of a statutory right may be valid even if it is not knowingly made.” United States v. Robinson, 8 F.3d 418, 421 (7th Cir.1993).
In Kastigar, the United States Supreme Court delineated the level of immunity required to uphold the constitutional protection against self-incrimination in holding that the government may force a witness to testify without offending his Fifth Amendment right against self-incrimination, provided that the government affords him both use and derivative use immunity. 406 U.S. at 453, 92 S.Ct. at 1661. Derivative use *541 immunity is broader than use immunity, and additionally precludes the use of evidence that may be discovered as a result of that testimony. United States v. Smith, 452 F.3d 323, 336-37 (4th Cir.2006).
In contrast, Code § 18.2-262 states:
No person shall be excused from testifying or from producing books, papers, correspondence, memoranda or other records for the Commonwealth as to any [drug] offense alleged to have been committed by another under this article or under the Drug Control Act (§ 54.1-3400 et seq.) by reason of his testimony or other evidence tending to incriminate himself, but the testimony given and evidence so produced by such person on behalf of the Commonwealth when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury, shall be in no case used against him nor shall he be prosecuted as to the offense as to which he testifies. Any person who refuses to testify or produce books, papers, correspondence, memoranda or other records, shall be guilty of a Class 2 misdemeanor.
The statute provides for two types of immunity. The first type of immunity created by the statute is “ ‘use’ immunity, which applies to all crimes, and stems from the clause, ‘shall be in no case used against him.’ The second type [of immunity provided by the statute] is immunity from prosecution, or so called ‘transactional’ immunity, which applies only to ‘the offense as to which he testifies.’ ” Caldwell v. Commonwealth, 8 Va.App. 86, 88, 379 S.E.2d 368, 369 (1989) (internal quotations in original). “Use immunity prevents a witness’s compelled testimony from being used in any way in a criminal prosecution of the witness, while transactional immunity prevents a witness from being prosecuted for the offense about which he testifies.” Id. at 88-89, 379 S.E.2d at 369-70.
By providing transactional immunity to witnesses who testify for the Commonwealth regarding drug offenses, *542 the General Assembly has thus provided these witnesses with a broader immunity than constitutionally required by virtue of otherwise compelled incriminating testimony. As such, Code § 18.2-262 does not provide a “right[ ] which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.” Schneckloth, 412 U.S. at 237, 93 S.Ct. at 2053. Accordingly, we hold that a waiver of this statutory right need not be a “knowing and intelligent” express waiver. Instead, a waiver of the provisions of this statute may be made implicitly.
Murphy argues that he did not waive any immunity through the plea agreement, because the agreement had no legal effect at the time he moved to dismiss his charges. Rule 3A:8(c)(1)(C)(2) of the Rules of the Supreme Court of Virginia states, in pertinent part, that “[i]f a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court.” This rule also requires that the plea agreement be approved by the trial court.
Absent judicial approval or prejudice to a criminal defendant, a proposed plea agreement cannot be binding upon the Commonwealth because the defendant has suffered no harm, and the defendant is [likewise] free to reject the proposed agreement before it is submitted to a court in spite of any prejudice that the Commonwealth may have incurred.
Commonwealth v. Sandy, 257 Va. 87, 91-92, 509 S.E.2d 492, 494 (1999) (emphasis added).
We note that what both parties characterize as a “plea agreement” actually embodies two distinct though inter-related agreements. See Commonwealth v. Sluss, 14 Va.App. 601, 604, 419 S.E.2d 263, 265 (1992) (Cooperation/immunity agreements are not only subject to the principles of contract law, but are also analogous to plea agreements and must be attended by constitutional safeguards to ensure that the defendant receives the performance he is due.); Lampkins v. Commonwealth, 44 Va.App. 709, 724, 607 S.E.2d 722, 729 *543 (2005) (“ ‘A grant of immunity is different from a plea bargain in that it can never be formalized by a plea of guilty.’ ” (quoting Plaster v. United States, 789 F.2d 289, 293 (4th Cir.1986))). One of these agreements is indeed a plea agreement in the classic sense and calls for the Commonwealth to move to nolle prosequi the transportation of marijuana charge in return for Murphy’s guilty plea and truthful testimony against the codefendant. This agreement ultimately required approval by the court pursuant to Rule 3A:8(c)(1)(C)(2). The other agreement is the implicit immunity agreement between Murphy and the Commonwealth and did not require prior approval by the trial court.[4] This immunity agreement was made up of two components: (1) Murphy’s implicit agreement to waive the transactional immunity granted by Code § 18.2-262 and testify against his codefendant, and (2) the Commonwealth’s promise to offer the plea agreement in which it would ask the trial court to nolle prosequi the transportation charge in return for Murphy’s plea of guilty.
Murphy moved for dismissal of his pending charges after testifying pursuant to his agreement but before entering his conditional guilty plea. Thus, at the time Murphy moved for dismissal, he was not bound by the plea agreement, and was free to withdraw from it. However, neither the subsequent entry of Murphy’s guilty plea nor the ultimate acceptance of the plea agreement by the court were prerequisites to his previous waiver of a statutory right. By voluntarily testifying as a witness at Dickson’s preliminary hearing, with the understanding at that time that the Commonwealth would *544 later withdraw one of his charges, Murphy implicitly waived any immunity he may have had under Code § 18.2-262.[5]
By moving to dismiss the charges and invoking his right to immunity if later called as a witness for the Commonwealth, Murphy effectively revoked that waiver. However, such a revocation, while prospectively effective, is not retroactive. We know of no authority holding that a subsequent reassertion of a right negates a prior waiver of that right as if it had never occurred. See United States v. Bily, 406 F.Supp. 726, 729 (E.D.Pa.1975) (holding evidence taken by federal agents after receiving consent to search defendant’s home admissible, but excluding evidence taken by agents after defendant revoked his consent by stating: “that’s enough, I want you to stop”). Moreover, under the logic advanced by Murphy, a cooperating codefendant should fervently hope that a plea agreement to which he is a signatory will be rejected by the trial court, thereby preventing any prosecution by virtue of a retroactive grant of transactional immunity.
In essence, Murphy implicitly waived his right to immunity. After the preliminary hearing and prior to trial, he elected to withdraw from his earlier agreement with the Commonwealth and expressly reassert his right to immunity if the Commonwealth again desired to call him as a witness against Dickson. During the time between his waiver and his revocation of that waiver, Murphy had given up any benefits of Code § 18.2-262. Thus, when Murphy testified at Dickson’s preliminary hearing, he had waived any transactional immunity he may have had under Code § 18.2-262, and Murphy was not, at that time, *545 immune from prosecution by virtue of his testimony as a witness for the Commonwealth.
To hold otherwise would turn a blind eye to the historical give-and-take nature of the adversarial process. The Commonwealth may determine that a codefendant’s testimony is essential to the successful prosecution of others and elect to present that testimony, thereby granting the witness use and transactional immunity pursuant to Code § 18.2-262. It may also determine that while helpful, such testimony is not essential. The codefendant may nevertheless elect to waive the provisions of Code § 18.2-262 and accept a plea offer that, while falling short of outright immunity, promises a more favorable charging decision from the prosecutor or a more lenient sentence from the court in exchange for that witness’ testimony.
CONCLUSION
We therefore hold that Murphy implicitly waived any transactional immunity he may have had under Code § 18.2-262 by agreeing to voluntarily testify for the Commonwealth in anticipation of the Commonwealth honoring future commitments made in a proposed plea agreement.

Affirmed.

. Murphy does not contest the validity of the search on appeal.

. The Commonwealth argued that Murphy could not claim immunity under the statute, because it only applied to "compelled” testimony, and Murphy had testified voluntarily. In stating its ruling from the bench, the trial court specifically stated that it was not addressing this issue.

. The written plea agreement ultimately accepted by the trial court contains no mention of any requirement that Murphy testify against Dickson at trial. The record also does not indicate whether Murphy did, in fact, testify at Dickson’s trial. Thus, it is unclear whether *539 Murphy was still required to testify against Dickson after Murphy entered his conditional plea of guilty.

. As the Fourth Circuit has noted,
[A] grant of immunity differs from a plea agreement in that it in no way involves court approval. In the case of a plea agreement, the court in essence executes the agreement by accepting the plea of guilty. In the case of a grant of immunity, however, only two parties are involved. The government alone makes a decision not to prosecute in exchange for testimony which will, hopefully, lead to a greater number of indictments or convictions. The most that one granted immunity can do is to agree to testify and then await the call of the government.
Plaster, 789 F.2d at 293.

. The concurrence criticizes our holding for "simply assuming] that the proposed plea agreement was an implicit waiver of immunity” without citing any authority or explaining why. However, our analysis makes no such assumption. Our holding rests upon Murphy’s implicit waiver of his statutory right to immunity by voluntarily testifying in anticipation of his plea agreement and not on whether Murphy waived any immunity he may have had under Code § 18.2-262 simply by virtue of the fact that the proposed plea agreement existed or that he had accepted it.