2007 OK CR 40

**STATE of Oklahoma, Appellant**

v.

**Delmer Frank BARTHELME, Appellee.**

No. S-2007-145.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 2007.

Bret T. Burns, District Attorney for Grady County, Chickasha, OK, attorney for State of Oklahoma/appellant at trial and on appeal.

Joel W. Vandruff, Oklahoma City, OK, attorney for defendant/appellee at trial and on appeal.

## OPINION

A. JOHNSON, Judge.

¶1 Appellee, Delmer Frank Barthelme, was charged by Information in the District Court of Grady County, Case No. CF–2006–409, with Count 1, Peace Officer Engaging in Illegal Gambling, a felony (21 O.S.2001, § 948), and with Count 2, Willful Neglect of Duty, a misdemeanor (21 O.S.2001, § 976). Following presentation of the State's evidence at preliminary hearing on the felony charge, the Honorable Kenny D. Harris, Special Judge, sitting as Magistrate, sustained a demurrer by Barthelme and declined to bind him over for trial on Count 1. The State thereupon initiated an appeal under the authority of 22 O.S.2001, § 1089.1. The Honorable C. Allen McCall, District Judge, was duly appointed to hear the appeal. On February 8, 2007, Judge McCall upheld the Magistrate's order.

¶2 The State now appeals to this Court. The appeal was regularly assigned to this Court's Accelerated Docket under Section XI of the *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2007). After hearing oral argument on July 19, 2007, and considering the State's propositions of error, the Court announced that it was reversing the orders below and that this written Opinion would follow.

### I.

### *Facts and Magistrate's Order*

¶3 According to the evidence presented at Barthelme's preliminary hearing, members of the Grady County District Attorney's Office and the Alcoholic Beverage Law Enforcement Commission (ABLE) conducted undercover video surveillance inside an Elks Lodge in Chickasha, Oklahoma. Based on evidence discovered from this one-year period of surveillance and other investigative information, a warrant was obtained for a

search of the Elks Lodge. On September 6, 2006, the search warrant was executed, financial records seized, and several computer video machines from a game room impounded. The machines presented games of video poker and the like which the State contends were being used for unlawful gambling.[1] Investigating authorities discovered that several city and county law enforcement personnel (and in some instances, their spouses) were members at the Elks Lodge and that they had been engaged in playing these video games.

¶4 The day after execution of the search warrant, Barthelme, a deputy for the Grady County Sheriff's Office, voluntarily agreed to be interviewed by Dusty Dowdle, an investigator for the Office of the District Attorney for Grady County. During this interview, Barthelme acknowledged that he was a member of the Elks Lodge and had played their machines. He told Dowdle that he had never won any money from the machines and had lost only $10.00. This statement was the extent of the State's proof at preliminary hearing that Barthelme had actually played the lodge's video machines.

¶5 At the conclusion of the State's evidence, Barthelme demurred and the Magistrate sustained that demurrer by finding that his statements to Dowdle were inadmissible. The Magistrate based his finding of inadmissibility upon the provisions of 21 O.S.2001, § 961. The reviewing District Judge affirmed that holding.

### II.

### *The State's Arguments on Appeal and Court's Analysis*

¶6 In its appeal of these rulings, the State asserts first that Section 961 has been "repealed and/or nullified" by a 1971 amendment to Article II, Section 27, of the Oklahoma Constitution,[2] and, second, in the alternative, that if Section 961 is still viable, the magistrate misapplied that statute in this

---

1. The machines themselves, although activated by the insertion of U.S. paper currency, did not dispense money. Instead, the machines kept track of wins and losses through a point counter representing five cents per point. When a player finished with points remaining, he or she could then summon an employee of the lodge who

would read the points and pay the player the value of the points.

2. As amended in 1971, Okla. Const. art. II, § 27, states:
   Any person having knowledge or possession of facts that tend to establish the guilt of any

case. Because we agree Section 961 was not applicable here, we do not reach the question of whether the statute survived the 1971 amendment to the constitution.

¶ 7 The statute at issue provides:

No person shall be excused from giving any testimony or evidence upon any investigation or prosecution for violation of this article, upon the ground that such testimony would tend to convict him of a crime, but such testimony or evidence shall not be received against him upon any criminal investigation or prosecution, except in a prosecution against him for perjury committed in giving such testimony.

21 O.S.2001, § 961. As the parties, the Magistrate, and the reviewing District Judge

have all noted, there is no published authority construing this statute.

¶ 8 By its plain language, Section 961 is a typical immunity statute: a statute that provides protection from prosecution to an individual compelled to surrender his privilege against self-incrimination.[3] Such a statute makes "immunity"[4] the legislatively sanctioned compensation for an individual's forfeiture of his privilege against self-incrimination when he has been compelled to deliver up self-incriminating testimony or evidence.[5]

¶ 9 In most jurisdictions, immunity is governed by statutory or constitutional provision.[6] Although this Court has not construed Section 961 in a published decision, we have

---

other person or corporation under the laws of the state shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence. All other provisions of the Constitution or the laws of this state in conflict with the provisions of this constitutional amendment are hereby expressly repealed.

This provision must be read in conjunction with Okla. Const. art. II, § 21, which provides, "No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided...."

**3.** Oklahoma has a number of immunity statutes. Some examples include: 2 O.S.2001, § 6–208(b)(6) (allowing immunity in connection with proceedings before the State Board of Agriculture concerning violations of the Oklahoma Meat Inspection Act); 21 O.S.2001, § 1265.6 (immunity in proceedings for violations of the Sabotage Prevention Act); 21 O.S.2001, § 1367 (immunity in investigations or prosecutions of offenses delineated in Title 21, Chapter 55 "Other Crimes Against Public Peace"); 40 O.S.2001, § 4–507 (immunity in proceedings before the "[Oklahoma Employment Security] Commission, the Board of Review, or an appeal tribunal" in connection with a disputed claim or the administration of the Employment Security Act of 1980); 71 O.S.Supp.2006, § 1–602(E) (immunity in hearings before the securities administrator of the Oklahoma Securities Commission investigating possible violations of the Oklahoma Uniform Securities Act of 2004).

**4.** There are two types of immunity: "use immunity" and "transactional immunity."

"Use immunity" does not bar prosecution of the witness, but forbids the admission of any

testimony that is specifically immunized and the evidence derived therefrom. It does not protect the witness from prosecution for a crime to which the witness' compelled testimony related if the evidence used against the witness was acquired independently of the compelled testimony even though the evidence was obtained from sources suggested by the immunized testimony. "Transactional immunity", on the other hand, protects the witness from prosecution for any transactions about which the witness testified under immunity.

3   Leo H. Whinery, *Oklahoma Evidence, Commentary on the Law of Evidence* § 43.57 (2d ed.2000), *citing as support Clem v. State*, 1985 OK CR 66, ¶ 18, 701 P.2d 770, 773. The Opinion in *Clem* also referred to the subcategory of use immunity known as "derivative use immunity," meaning immunity from prosecution through the use of evidence derived from immunized testimony. *Clem*, ¶¶ 18–19 & n. 2, 701 P.2d at 773 & n. 2.

**5.** "[I]mmunity statutes are designed to serve as substitutes for the fifth amendment right not to incriminate oneself. Without such statutes no person in a criminal case can constitutionally be compelled to testify." *State v. Jones*, 213 Neb. 1, 328 N.W.2d 166, 174 (1982). "The concept of immunity has developed as the 'rational accommodation between the imperatives of the privilege [against self-incrimination] and the legitimate demands of government to compel citizens to testify.' It is through immunity statutes supplanting the privilege that Legislatures have attempted to ease such tensions." *Attorney General v. Colleton*, 387 Mass. 790, 444 N.E.2d 915, 918 (1982) (citation omitted).

**6.** 3 Whinery, *supra* note 4, § 43.56; *see also City of Hollywood v. Washington*, 384 So.2d 1315, 1319 (Fla.Dist.Ct.App.1980) ("Immunity from prosecution is a creature of statute."). Professor Whinery cites Texas as an example of a jurisdic-

construed the immunity provisions within the State Constitution:

> In order for a person to secure immunity under the above section of Constitution on account of incriminating evidence given by him as a witness in any court, he must have testified under an agreement made with the prosecuting attorney, approved by the court, or he must have claimed the privilege of silence which must have been denied by the court and such person must have been compelled by the court to testify.

*Cortez v. State*, 1966 OK CR 17, ¶ 4, 415 P.2d 196, 199 (emphasis omitted).[7]

¶ 10 The point that was missed by the court below in the instant case is that a defendant in Barthelme's position cannot claim immunity from prosecution by showing he volunteered a statement which incriminated him.[8] Compulsion is a condition precedent for immunity. *Scribner v. State*, 9 Okl. Cr. 465, 484, 132 P. 933, 940 (1913).

¶ 11 Similarly, authorities in other jurisdictions have made clear that their statutes also assume compulsion as a prerequisite.[9] These jurisdictions (depending on the particular wording of their immunity statute), differ as to the form the compulsion must take,[10] as well as whether the statute is "self-execut-

tion where immunity is not statutory; instead, it is "derived from the so-called inherent power of prosecuting attorneys." 3 Whinery, *supra* note 4, § 43.56 & n. 6.

**7.** *Accord Hunter v. State*, 63 Okl.Cr. 24, 31, 72 P.2d 399, 402 (1937) (holding that before immunity under the provision at Okla. Const. art. II, § 27, can be given a witness, " 'such witness must have testified under an agreement made with the prosecuting attorney, approved by the court, or such witness must have claimed the privilege of silence, which was by the court denied, and such witness must have been compelled by the court to so testify' "); *Eden v. State*, 54 Okl.Cr. 265, 267, 21 P.2d 775, 776 (1933) (upon concluding that immunity under Section 27 of the State Constitution's Bill of Rights "could only be secured by the consent of the county attorney and upon the approval of the trial judge, or that the witness decline to testify and was compelled to do so by the court"; the Court found that defendant was not entitled to immunity because the "county attorney made no agreement and the court made no order granting immunity ... and made no order requiring the defendant to testify over his objection; but on the contrary it appears from the record that defendant took the witness stand in the trial of his codefendant and testified voluntarily"); *Morrison v. State*, 49 Okl.Cr. 369, 374–75, 294 P. 825, 827 (1931) ("That in order to secure immunity under section 27 of article 2, the incriminatory evidence given by a witness in order to support a plea in bar must have been given under an agreement with the prosecuting attorney and approved by the court; or the witness must have claimed the privilege of silence which was denied by the court and the witness compelled by the court to testify....").

**8.** *See Hoffman v. State*, 1980 OK CR 35, ¶ 10, 611 P.2d 267, 270 (where appellant claimed immunity under State Constitution, Court rejected claim and observed, "[T]he appellant voluntarily testified in the murder trial; he was not compelled to take the witness stand. We fail to see how there can be a violation of immunity when the appellant has not been forced to testify.").

**9.** *E.g., State ex rel. Raines v. Grayson*, 55 So.2d 554, 556 (Fla.1951) (per curiam) (before a witness could be immunized from prosecution under a statute that allowed immunity for individuals giving testimony in gambling investigations, "there must be compulsion, coercion or an offer of immunity in return for his testimony"); *State v. Panagoulis*, 253 Md. 699, 253 A.2d 877, 882 (1969) ("It is quite clear that the statutes equate immunity with compulsion, but it is equally clear that a witness, although *compellable*, gains no immunity unless he is *compelled*."); *State v. Hennessey*, 195 Or. 355, 245 P.2d 875, 883 (1952) (in applying statute giving immunity to witnesses who testify about offenses committed under state's gambling act, court construed statute's immunity provision as being applicable "only where one is compelled to testify at the instance of the prosecution," and statute was not applicable to witnesses subpoenaed by a defendant because witness in that instance could have asserted his privilege against self-incrimination and refused to answer); *State v. Hall*, 65 Wis.2d 18, 221 N.W.2d 806, 811–12 (1974) (finding that "before immunity statutes apply, the witness must actually be compelled to testify under the statute" and that "[f]or the immunity statutes to operate, there must be '... evidence under real compulsion, not mere right of compulsion' " and the witness "must be ordered or directed by one having authority so to do to answer under penalty of contempt for failing so to do"). *See also United States v. Turner*, 936 F.2d 221, 223 (6th Cir.1991) ("The federal immunity statute prohibits the compelled testimony of a witness from being used against him 'in *any* criminal case....' ").

**10.** *Compare State ex rel. Foster v. Hall*, 230 So.2d 722, 723 (Fla.Dist.Ct.App.1970) (finding that subjecting the witness to a subpoena did not automatically make the witness' testimony compulso-

ing" or requires invocation of the Fifth Amendment privilege before immunity can apply.[11] Nevertheless, despite such variations, we have found no jurisdiction that allows immunity to attach without the presence of some type of compulsion. Consequently, were we to follow the dissent's interpretation of Section 961 and abrogate any requirement for compulsion, we would place a construction upon this immunity statute wholly unique in American jurisprudence.[12]

¶ 12 We therefore find that Section 961 (like the many other immunity provisions we have examined) requires the statement or testimony at issue (1) be protected by the constitutional privilege against self-incrimination and (2) be given under compulsion before its protection attaches. Absent a showing that Barthelme's statements here were in any manner compelled, he is ineligible for any immunity protection offered by Section 961.

¶ 13 As Barthelme's circumstance does not allow him to invoke immunity under either Section 961 or the State Constitution, we must leave for another day whether Section 961 can be reconciled with the State Constitution's provisions on immunity and compelled self-incriminating testimony, whether Section 961 is a self-executing statute, and whether Section 961 provides transactional immunity or only use immunity.

¶ 14 In its third and final proposition of error, the State contends this Court should order Barthelme bound over for trial upon any reversal of the Magistrate's order strik-

ing his statement. It is the State's position that with the inclusion of this stricken piece of evidence, there was evidence sufficient to meet its burden of probable cause. The Court finds that the proper procedure is to remand this matter to the District Court with instructions to the Magistrate to resume the preliminary hearing and consider Barthelme's statement to Dowdle in determining whether there is probable cause to hold him over for trial on Count 1. *See State v. Harrison*, 1989 OK CR 27, 777 P.2d 1343 (where magistrate erred in not considering transcript and in misconstruing statute, case was remanded to magistrate for further preliminary hearing proceedings consistent with opinion).

### *III.*

### *Decision*

¶ 15 It was error for the Magistrate, based on Section 961 alone, to exclude Barthelme's statements to Dowdle from court consideration in determining whether the State had established probable cause on the felony alleged in Count 1. This error requires remand of this matter to the District Court to allow the Magistrate to resume Barthelme's preliminary hearing, consider the excluded statements made by him to Dowdle, and determine if such statements, in connection with all of the other evidence introduced at the preliminary hearing, provides probable cause to bind him over for trial on Count 1. Accordingly, the order of the Magistrate and its affirmance by the reviewing District

---

ry: "The mere fact that the defendant was under subpoena to appear is immaterial. Compulsory attendance is one thing and compulsory testimony is quite another. The compulsion required to bring into play the immunity provisions of the [cited] statute relates solely to compulsory testimony.") *with People v. Beller*, 50 Ill.App.3d 394, 8 Ill.Dec. 476, 365 N.E.2d 714, 716, (1977) (because defendant was not under subpoena and because immunity statute specifically required the incriminating evidence be given *"under oath and pursuant to a subpoena,"* trial court erred in finding that defendant had immunity; "fact that defendant may have testified at the administrative hearing under oath does not mean that he necessarily did so involuntarily").

11. *See Jenny v. State*, 447 So.2d 1351, 1353 (Fla. 1984) (finding immunity statute at issue had "no

requirement that a person must invoke the privilege against self-incrimination in order to be granted immunity" and therefore statute should be construed as "self-executing"); *State v. Carroll*, 83 Wash.2d 109, 515 P.2d 1299, 1303 (1973) (finding that immunity statutes were "self-executing" because witness, by virtue of subpoena, is compelled to testify at grand jury proceedings investigating bribery or corruption; hence, "requiring the witness under such circumstances to invoke the privilege against self-incrimination would be requiring performance of a useless act").

12. We note that Judge Chapel's dissent cites no authority from any jurisdiction that has construed an immunity statute in the manner he advocates for Section 961.

Judge are **REVERSED** and the matter **REMANDED** for further proceedings consistent with this Opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2007), **MANDATE IS ORDERED ISSUED** upon the filing of this decision.

LUMPKIN, P.J. and C. JOHNSON, V.P.J., concur.

CHAPEL and LEWIS, JJ., dissent.

CHAPEL, J., dissenting:

¶ 1 Barthelme agreed to a voluntary interview with the Grady County District Attorney investigator. Admissions from this interview were later used against him at preliminary hearing. The magistrate and District Court found these statements were inadmissible under 21 O.S.2001, § 961. I agree.

¶ 2 Found in the statutes prohibiting gambling, Section 961 grants a particular type of immunity from prosecution. It provides:

> No person shall be excused from giving any testimony or evidence upon any investigation or prosecution for violation of this article, upon the ground that such testimony would tend to convict him of a crime, but such testimony or evidence shall not be received against him upon any criminal investigation or prosecution, except in a prosecution against him for perjury committed in giving such testimony.

This statute on its face specifically includes testimony or evidence which is not compelled, but voluntarily made in the course of an investigation—like the statements Barthelme made here. Despite this specific statutory language, the majority here characterizes Section 961 as a statute which only protects an individual from prosecution based on compelled testimony.

¶ 3 I find no fault with the majority's thorough discussion of the law regarding compelled testimony, the provisions of the Oklahoma constitution and general immunity statutes. I agree that many immunity statutes, and our constitutional provision, offer protection when a person is compelled to give self-incriminating testimony or evidence. I absolutely disagree with the majority's assumption that no person can claim immunity from prosecution under any circumstances unless his testimony has been compelled. This assumption has no basis in the statutory language of Section 961. In fact, it disregards the specific reference to testimony or evidence given *upon any investigation.*

¶ 4 The majority appears to rely on Art. 2, § 27 of the Oklahoma constitution and the many cases interpreting it. That constitutional provision states:

> Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation under the laws of the state shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence.[1]

This language is limited to a situation where a person is legally called on to testify or give evidence. I agree that a person claiming immunity under that provision must refuse to testify, claim the Fifth Amendment privilege, and be compelled to give testimony. I fail to see how it, and the cases interpreting it, apply to Section 961's protection for persons who give information against themselves during the course of an investigation. Compulsion may well be, as the majority has it, a condition precedent for a grant of immunity under the Oklahoma constitution, according to the cases interpreting the constitutional provision on immunity. None of these cases construes or interprets, even by analogy, the grant of immunity offered by statute in Sec-

---

1. Okla. Const. art. 2, § 27. Okla. Const. art. 2, § 21 states in part: "No person shall be compelled to give evidence which will tend to incrim-inate him, except as in this Constitution specifically provided...." The provision in Section 27 complements this provision.

tion 961.[2] I do not suggest these cases are wrong. I merely believe they offer no assistance in interpreting the specific and unique language found in Section 961.

¶ 5 The inclusion of the language *"upon any investigation"* in Section 961 differs significantly and substantively from the constitutional language. I conclude that the Legislature intended Section 961 to mean exactly what it says, by providing immunity from prosecution for persons who volunteer self-incriminating statements during the course of an investigation into gambling offenses. I believe this is consistent with the purpose of the statute, which encourages persons to give law enforcement officers information about illegal gambling operations. I believe my conclusion is also supported by the contrast in language between Section 961, the Oklahoma constitution, and case law interpreting the constitutional immunity provision. To deny any meaning to the phrase *"upon any investigation,"* simply because it is not present in the constitutional provision, is to render that part of Section 961 superfluous. This Court should avoid any statutory construction which would make a provision of the statute useless.[3]

¶ 6 The majority states that Section 961 requires that the statement at issue must be protected by the constitutional privilege against self-incrimination and "be given under compulsion before its protection attaches."[4] Nothing in the language of Section 961 supports this interpretation of the statute. The majority relies wholly on constitutional provisions and case law which do not apply here. There are no cases on this issue, and I therefore cite none. Very occasionally this Court is called upon to make a ruling of law in the first instance. As the majority admits, this is a case of first impression: this Court has never interpreted the

specific language of Section 961.[5] I base my conclusion on sound principles of legislative interpretation rather than citing cases which have no relevance to the issue. I am not troubled by the fact that following the plain language of this statute requires an interpretation of law different from interpretations of other immunity statutes and constitutional provisions containing different language. My interpretation of Section 961 has no effect on the settled law governing immunity provisions which do require compulsion; I merely acknowledge the fact that this particular statute does not. I would take the statute at its word, grant Barthelme the protection it provides, and affirm the district court's decision.

¶ 7 I am authorized to state that Judge Lewis joins in this dissent.

2. The same is true of the cases from other jurisdictions cited by the majority. In every case, the relevant statute specifically refers to compelled testimony, a court order to produce evidence, or a subpoena to appear before a grand jury or district attorney.

3. *State v. Okla. County District Court, the Hon. D. Fred Doak,* 2007 OK CR 3, 154 P.3d 84, 87;

*Vilandre v. State,* 2005 OK CR 9, ¶ 5, 113 P.3d 893, 896.

4. Majority Opinion at 205.

5. For this reason I find irrelevant the majority's cited cases from other jurisdictions, which do not deal with this language; nor do I find it necessary to bolster our own first interpretation of Section 961 by referring to other jurisdictions.