COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia


SIMON VAUGHN MURPHY

                                                               OPINION BY
v.        Record No. 2883-06-1                    JUDGE ROBERT J. HUMPHREYS
                                                               APRIL 15, 2008
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                                  Glen A. Tyler, Judge

             Paul G. Watson IV for appellant.

             Jennifer C. Williamson, Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        Simon Vaughn Murphy ("Murphy") appeals his conviction of possession with intent to

distribute more than five pounds of marijuana, in violation of Code § 18.2-248.1.  He argues that

he was immune from prosecution by virtue of his testimony as a Commonwealth's witness.  For

the reasons that follow, we disagree and affirm Murphy's conviction.

                                         BACKGROUND

        The facts in this case are undisputed.  On March 10, 2005, Murphy and his passenger

Omar Dickson ("Dickson") arrived at the north toll plaza of the Chesapeake Bay Bridge Tunnel

in Northampton County.  A state trooper at the toll plaza smelled marijuana in the vehicle,

ordered Murphy to pull over, conducted a search of the vehicle, and found approximately sixteen

pounds of marijuana inside.[1]

_____

        [1] Murphy does not contest the validity of the search on appeal.

The Commonwealth charged Murphy and Dickson with possession with intent to distribute more than five pounds of marijuana and transporting more than five pounds of marijuana into the Commonwealth, in violation of Code §§ 18.2-248.1 and 18.2-248.01, respectively.

The Commonwealth viewed Dickson as being more culpable than Murphy and, thus, entered into an agreement with Murphy. Under the agreement, Murphy would testify against Dickson at both Dickson's preliminary hearing and trial. In exchange, the Commonwealth would *nolle prosequi* the transportation charge, which carried a mandatory minimum sentence of three years. Murphy complied with the terms of the agreement, and testified for the Commonwealth at Dickson's preliminary hearing. Notwithstanding his agreement with the Commonwealth, Murphy subsequently moved to dismiss both charges, arguing that his testimony as a Commonwealth's witness had earned him transactional immunity under Code § 18.2-262.

The trial court heard arguments on the motion on June 16, 2006. At this time, Murphy stipulated the existence of an agreement and its terms, but at the time of Murphy's testimony at Dickson's preliminary hearing, neither party had reduced the agreement to writing nor had it been accepted by the trial court. On July 17, 2006, the trial court denied the motion, and held that Murphy had waived any right of immunity he may have had under the statute by entering into the agreement with the Commonwealth.[2]

After the trial court denied the motion, the parties reduced the original agreement to writing with the additional proviso that Murphy would be permitted to appeal the immunity issue

---

[2] The Commonwealth argued that Murphy could not claim immunity under the statute, because it only applied to "compelled" testimony, and Murphy had testified voluntarily. In stating its ruling from the bench, the trial court specifically stated that it was not addressing this issue.

and submitted it to the trial court.[3]  After the trial court approved the plea agreement, Murphy entered a conditional guilty plea pursuant to Code § 19.2-254.  The Commonwealth then requested and received an order to *nolle prosequi* the transportation charge, pursuant to the plea agreement.  The trial court convicted Murphy of possession with intent to distribute more than five pounds of marijuana.  This appeal followed.

ANALYSIS

Murphy argues on appeal, as he did in the trial court, that he acquired transactional immunity to both charges by virtue of his testimony as a Commonwealth's witness, thereby barring his prosecution on either offense.  First, he argues that Code § 18.2-262 applied to this case because it did not require his testimony to be "compelled" in order to grant him immunity.  Next, he argues that he did not waive immunity under Code § 18.2-262 by entering into the plea agreement with the Commonwealth.

The Commonwealth responds that Code § 18.2-262 is inapplicable because Murphy was not "compelled" to testify and that in any event, Murphy waived that immunity by entering into the plea agreement with the Commonwealth.  Specifically, the Commonwealth notes that Murphy voluntarily entered into a bargained-for agreement, where Murphy agreed to testify against his codefendant, and plead guilty to possession of marijuana with intent to distribute.  In exchange, the Commonwealth agreed to *nolle prosequi* the transportation charge.  Thus, the Commonwealth argues that Murphy implicitly bargained away his right to immunity by agreeing to the terms of the plea agreement.  Furthermore, the Commonwealth argues that this waiver need not be an express waiver, because the right involved was not constitutional, but statutory.

---

[3] The written plea agreement ultimately accepted by the trial court contains no mention of any requirement that Murphy testify against Dickson at trial.  The record also does not indicate whether Murphy did, in fact, testify at Dickson's trial.  Thus, it is unclear whether Murphy was still required to testify against Dickson after Murphy entered his conditional plea of guilty.

Initially and contrary to the assertion of both the Attorney General and the concurrence, the statutory transactional immunity afforded by Code § 18.2-262 does not require that testimony be "compelled" as is the case with the more narrow protection provided by the United States Constitution.  See Kastigar v. United States, 406 U.S. 441, 444 (1972) (holding that the most important exemption from testimonial duty is "the Fifth Amendment privilege against compulsory self-incrimination").  In contrast, unlike the Self-Incrimination Clause of the Fifth Amendment, Code § 18.2-262, by its plain language, contains no compulsion element and instead conveys transactional immunity for incriminating testimony "when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury."  We must presume the General Assembly chose its words with care and, "we are not free to add [to] language, nor to ignore language, contained in statutes."  BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (quoting SIGNAL Corp. v. Keane Federal Sys., Inc., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)).

Nonetheless, we do agree with the Commonwealth's remaining argument.  We note that "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."  Schneckloth v. Bustamonte, 412 U.S. 218, 237 (1973).  "In contrast, a waiver of a statutory right may be valid even if it is not knowingly made."  United States v. Robinson, 8 F.3d 418, 421 (7th Cir. 1993).

In Kastigar, the United States Supreme Court delineated the level of immunity required to uphold the constitutional protection against self-incrimination in holding that the government may force a witness to testify without offending his Fifth Amendment right against self-incrimination, provided that the government affords him both use and derivative use

- 4 -

immunity. 406 U.S. at 453. Derivative use immunity is broader than use immunity, and additionally precludes the use of evidence that may be discovered as a result of that testimony. United States v. Smith, 452 F.3d 323, 336-37 (4th Cir. 2006).

In contrast, Code § 18.2-262 states:

> No person shall be excused from testifying or from producing books, papers, correspondence, memoranda or other records for the Commonwealth as to any [drug] offense alleged to have been committed by another under this article or under the Drug Control Act (§ 54.1-3400 et seq.) by reason of his testimony or other evidence tending to incriminate himself, but the testimony given and evidence so produced by such person on behalf of the Commonwealth when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury, shall be in no case used against him nor shall he be prosecuted as to the offense as to which he testifies. Any person who refuses to testify or produce books, papers, correspondence, memoranda or other records, shall be guilty of a Class 2 misdemeanor.

The statute provides for two types of immunity. The first type of immunity created by the statute is "'use' immunity, which applies to all crimes, and stems from the clause, 'shall be in no case used against him.' The second type [of immunity provided by the statute] is immunity from prosecution, or so called 'transactional' immunity, which applies only to 'the offense as to which he testifies.'" Caldwell v. Commonwealth, 8 Va. App. 86, 88, 379 S.E.2d 368, 369 (1989) (internal quotations in original). "Use immunity prevents a witness's compelled testimony from being used in any way in a criminal prosecution of the witness, while transactional immunity prevents a witness from being prosecuted for the offense about which he testifies." Id. at 88-89, 379 S.E.2d at 369-70.

By providing *transactional* immunity to witnesses who testify for the Commonwealth regarding drug offenses, the General Assembly has thus provided these witnesses with a broader immunity than constitutionally required by virtue of otherwise compelled incriminating

testimony.  As such, Code § 18.2-262 does not provide a "right[] which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."  Schneckloth, 412 U.S. at 237.  Accordingly, we hold that a waiver of this statutory right need not be a "knowing and intelligent" express waiver.  Instead, a waiver of the provisions of this statute may be made implicitly.

Murphy argues that he did not waive any immunity through the plea agreement, because the agreement had no legal effect at the time he moved to dismiss his charges.  Rule 3A:8(c)(1)(C)(2) of the Rules of the Supreme Court of Virginia states, in pertinent part, that "[i]f a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court."  This rule also requires that the plea agreement be approved by the trial court.

> Absent judicial approval or prejudice to a criminal defendant, a proposed plea agreement cannot be binding upon the Commonwealth because the defendant has suffered no harm, *and the defendant is [likewise] free to reject the proposed agreement before it is submitted to a court in spite of any prejudice that the Commonwealth may have incurred.*

Commonwealth v. Sandy, 257 Va. 87, 91-92, 509 S.E.2d 492, 494 (1999) (emphasis added).

We note that what both parties characterize as a "plea agreement" actually embodies two distinct though inter-related agreements.  See Commonwealth v. Sluss, 14 Va. App. 601, 604, 419 S.E.2d 263, 265 (1992) (Cooperation/immunity agreements are not only subject to the principles of contract law, but are also analogous to plea agreements and must be attended by constitutional safeguards to ensure that the defendant receives the performance he is due.); Lampkins v. Commonwealth, 44 Va. App. 709, 724, 607 S.E.2d 722, 729 (2005) ("'A grant of immunity is different from a plea bargain in that it can never be formalized by a plea of guilty.'" (quoting Plaster v. United States, 789 F.2d 289, 293 (4th Cir. 1986))).  One of these agreements

is indeed a plea agreement in the classic sense and calls for the Commonwealth to move to *nolle prosequi* the transportation of marijuana charge in return for Murphy's guilty plea and truthful testimony against the codefendant. This agreement ultimately required approval by the court pursuant to Rule 3A:8(c)(1)(C)(2). The other agreement is the implicit immunity agreement between Murphy and the Commonwealth and did not require prior approval by the trial court.[4] This immunity agreement was made up of two components: (1) Murphy's implicit agreement to waive the transactional immunity granted by Code § 18.2-262 and testify against his codefendant, and (2) the Commonwealth's promise to offer the plea agreement in which it would ask the trial court to *nolle prosequi* the transportation charge in return for Murphy's plea of guilty.

Murphy moved for dismissal of his pending charges after testifying pursuant to his agreement but before entering his conditional guilty plea. Thus, at the time Murphy moved for dismissal, he was not bound by the plea agreement, and was free to withdraw from it. However, neither the subsequent entry of Murphy's guilty plea nor the ultimate acceptance of the plea agreement by the court were prerequisites to his previous waiver of a statutory right. By voluntarily testifying as a witness at Dickson's preliminary hearing, with the understanding *at*

---

[4] As the Fourth Circuit has noted,

> [A] grant of immunity differs from a plea agreement in that it in no way involves court approval. In the case of a plea agreement, the court in essence executes the agreement by accepting the plea of guilty. In the case of a grant of immunity, however, only two parties are involved. The government alone makes a decision not to prosecute in exchange for testimony which will, hopefully, lead to a greater number of indictments or convictions. The most that one granted immunity can do is to agree to testify and then await the call of the government.

Plaster, 789 F.2d at 293.

*that time* that the Commonwealth would later withdraw one of his charges, Murphy implicitly waived any immunity he may have had under Code § 18.2-262.[5]

By moving to dismiss the charges and invoking his right to immunity if later called as a witness for the Commonwealth, Murphy effectively revoked that waiver. However, such a revocation, while prospectively effective, is not retroactive. We know of no authority holding that a subsequent reassertion of a right negates a prior waiver of that right as if it had never occurred. See United States v. Bily, 406 F. Supp. 726, 729 (E.D. Pa. 1975) (holding evidence taken by federal agents after receiving consent to search defendant's home admissible, but excluding evidence taken by agents after defendant revoked his consent by stating: "that's enough, I want you to stop"). Moreover, under the logic advanced by Murphy, a cooperating codefendant should fervently hope that a plea agreement to which he is a signatory will be rejected by the trial court, thereby preventing *any* prosecution by virtue of a retroactive grant of transactional immunity.

In essence, Murphy implicitly waived his right to immunity. After the preliminary hearing and prior to trial, he elected to withdraw from his earlier agreement with the Commonwealth and expressly reassert his right to immunity if the Commonwealth again desired to call him as a witness against Dickson. During the time between his waiver and his revocation of that waiver, Murphy had given up any benefits of Code § 18.2-262. Thus, when Murphy testified at Dickson's preliminary hearing, he had waived any transactional immunity he may

---

[5] The concurrence criticizes our holding for "simply assum[ing] that the proposed plea agreement *was* an implicit waiver of immunity" without citing any authority or explaining why. However, our analysis makes no such assumption. Our holding rests upon Murphy's implicit waiver of his statutory right to immunity by *voluntarily testifying* in anticipation of his plea agreement and not on whether Murphy waived any immunity he may have had under Code § 18.2-262 simply by virtue of the fact that the proposed plea agreement existed or that he had accepted it.

have had under Code § 18.2-262, and Murphy was not, at that time, immune from prosecution by virtue of his testimony as a witness for the Commonwealth.

To hold otherwise would turn a blind eye to the historical give-and-take nature of the adversarial process. The Commonwealth may determine that a codefendant's testimony is essential to the successful prosecution of others and elect to present that testimony, thereby granting the witness use and transactional immunity pursuant to Code § 18.2-262. It may also determine that while helpful, such testimony is not essential. The codefendant may nevertheless elect to waive the provisions of Code § 18.2-262 and accept a plea offer that, while falling short of outright immunity, promises a more favorable charging decision from the prosecutor or a more lenient sentence from the court in exchange for that witness' testimony.

CONCLUSION

We therefore hold that Murphy implicitly waived any transactional immunity he may have had under Code § 18.2-262 by agreeing to voluntarily testify for the Commonwealth in anticipation of the Commonwealth honoring future commitments made in a proposed plea agreement.

Affirmed.

Haley, J., concurring in the judgment.

I write separately because I believe the majority's opinion creates needless uncertainty in the law governing plea agreements. Is a criminal defendant legally bound by any of the terms of his plea agreement before the agreement is presented to and accepted by the trial court? Before today, the answer to this question was a straightforward no. Now it is a more nebulous maybe. However, I agree that the majority reaches the correct result, albeit for the wrong reason, because, in my view, Code § 18.2-262's grant of transactional immunity applies only to witnesses who give compelled testimony. Because appellant testified voluntarily, I believe his conviction must be affirmed.

## ANALYSIS

### (1)

The attorney for the Commonwealth described the results of the plea negotiations between the parties for the trial court during the hearing on appellant's motion to dismiss the indictment.

> When we arrived at the preliminary hearing, the Commonwealth took the view that [appellant's codefendant] was the more culpable person and the Commonwealth struck a deal with the defendant through Mr. Neskis – Mr. Neskis represented [appellant] at that time – to this effect. Commonwealth – obviously, this would happen in the Circuit Court – would drop the transportation charge, which has a mandatory minimum sentence, and [appellant] would plead guilty to the simple possession with intent to distribute more than five pounds in exchange for his testimony at the preliminary hearing and thereafter.

This was a proposed plea agreement. Its provisions included appellant's guilty plea to one of the charges. The majority suggests that this agreement had two separate provisions, the plea agreement and a related cooperation/immunity agreement. But I cannot agree that the record supports the majority's view because both of our prior cooperation/immunity cases involved the Commonwealth's express promise of immunity in exchange for the defendant's cooperation.

- 10 -

Lampkins v. Commonwealth, 44 Va. App. 709, 713, 607 S.E.2d 722, 724 (2005); Commonwealth v. Sluss, 14 Va. App. 601, 604-05, 419 S.E.2d 263, 266 (1992). Before Sluss, there were no cases recognizing cooperation/immunity agreements in Virginia. Id. at 604, 419 S.E.2d at 265. Our Supreme Court has also found cooperation/immunity agreements to be enforceable, but only in the context of a case involving express promises from the Commonwealth that the defendant's statements would not be used against him except under specific written conditions. Hood v. Commonwealth, 269 Va. 176, 178, 608 S.E.2d 913, 914 (2005). The majority's suggestion that a cooperation/immunity agreement can be implied from the existence of an ordinary plea agreement together with the defendant's testimony is completely without precedent in Virginia. The case of Plaster v. United States, 789 F.2d 289, 290-91 (4th Cir. 1986), also relied upon by the majority, also involved an express promise of immunity from the government, the promise that the defendant would receive immunity from extradition in return for his cooperation.

In this case, the Commonwealth proffered to the trial court the provisions of the proposed plea agreement at the hearing on appellant's motion to dismiss the indictment. The defense stipulated to the Commonwealth's proffer. The proffer, quoted on the previous page, includes no promise of immunity by the prosecution and no waiver of statutory transactional immunity by the defense. The majority never attempts to explain how this agreement can be a cooperation/immunity agreement when it says nothing at all about immunity. The majority is therefore unpersuasive in their insistence that there were two agreements in this case. The record shows only one.

According to our Supreme Court, a defendant is "free to reject the proposed [plea] agreement before it is submitted to a court in spite of any prejudice that the Commonwealth may have incurred." Commonwealth v. Sandy, 257 Va. 87, 92, 509 S.E.2d 492, 494 (1999). Until

adopted by the judgment of the court, a proposed plea agreement is "a mere executory agreement." Mabry v. Johnson, 467 U.S. 504, 507 (1984).

In Sandy, the Commonwealth's Attorney negotiated with the defense attorney, and the result of their negotiations was a signed document. Sandy, 257 Va. at 89, 509 S.E.2d at 492. The document provided that the defendant would meet with and answer the questions of the Commonwealth's Attorney. Id. If the prosecutor were satisfied that the defendant provided full and complete information, the document stated that the Commonwealth would amend seven of the indictments to misdemeanors, agree that the defendant should serve a six-month jail sentence on each of them, the sentences to run concurrently with one another, and that the remaining charges would be dismissed. Id. After defendant had four meetings with the Commonwealth' s Attorney, the Commonwealth's Attorney refused to honor the agreement and the defendant asked the trial court for specific performance of the plea agreement. Id. at 90, 509 S.E.2d at 493. The trial court held that there "was no agreement that could be enforced by the court." Id. This Court reversed the defendant's conviction. But the Supreme Court of Virginia reinstated the conviction. Citing Rule 3A:8(c)(1)(C)(2) of their Rules, the Supreme Court stated:

> This Rule, which governs plea agreements in this Commonwealth in criminal proceedings, states in relevant part that "if a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court." This Rule also provides that the circuit court approve the plea agreement. The Commonwealth correctly points out, and the defendant concedes, the agreement in this case was never approved by the circuit court as required by Rule 3A:8.

Id. at 91, 509 S.E.2d at 494. "We hold that a Commonwealth's Attorney may withdraw from a proposed plea agreement at any time before the actual entry of a guilty plea by a defendant or any other change of position by the defendant resulting in prejudice to him because of reliance upon the agreement." Id.

- 12 -

The majority concedes that appellant was not bound by the plea agreement at the time he moved for dismissal of the charges. However, they still hold that the anticipated agreement somehow operated to waive appellant's protection under the immunity statute. "By voluntarily testifying as a witness at Dickson's preliminary hearing, with the understanding *at that time* that the Commonwealth would later withdraw one of his charges, Murphy implicitly waived any immunity he may have had under Code § 18.2-262." Ante at 7. I do not think this approach is consistent with Sandy. Sandy reinstated the trial court's ruling that, "there was no agreement between the defendant and the Commonwealth that could be enforced by the court." 257 Va. at 90, 509 S.E.2d at 493. In this case, the trial court gave legal effect to part of a similar agreement by holding that the proposed agreement acted as a waiver of Code § 18.2-262. Therefore the trial court's ruling constituted court enforcement of a type of agreement that our Supreme Court has expressly held to be unenforceable against a defendant until after the parties meet the requirements of Rule 3A:8. Id. at 91, 509 S.E.2d at 494.

The majority reasons that appellant's motion to dismiss the charges acted as a repudiation of the plea agreement. Appellant could legally do this because the agreement had not yet been approved by the court pursuant to Rule 3A:8. This repudiation, the majority continues, did not affect a waiver of appellant's statutory rights that predated his motion to dismiss. The majority compares this case to a consent search of a house, citing United States v. Bily, 406 F. Supp. 726 (E.D. Pa. 1975), and explaining that the owner of the house could withdraw his prior consent to a search of his house, but that the homeowner's withdrawal of consent to search would not mandate the suppression of evidence the agents had discovered before he withdrew his consent. The logical difficulty is that the majority's argument simply assumes that the proposed plea agreement *was* an implicit waiver of immunity. They never explain why, and they cite no authority for the proposition that it was. Following this initial assumption with a more reasoned

- 13 -

discussion of its procedural implications can only disguise the error for so long. The analogy to the house search is also unpersuasive. An important difference between that case and this one is that there was no rule of court or judicial decision telling the owner of that house that he could wait until a later date to make his mind up about whether he really wanted his consent to the search of his house to have any legal effect whatsoever.

(2)

Because I do not believe the proposed plea agreement waived any right appellant may have had to immunity, I now consider whether Code § 18.2-262 applied to appellant's testimony. I concur in the result reached by the majority. I do so, however, on the grounds that there is no evidence in the record that appellant's testimony was compelled. One reason why I believe there is a compulsion requirement for statutory immunity is the relationship of immunity statutes generally to the Fifth Amendment privilege against compulsory self-incrimination. "[S]tate and federal immunity statutes, represent legislative efforts to 'seek a rational accommodation between the imperatives of the [Fifth Amendment] privilege and the legitimate demands of government to compel citizens to testify.'" Gosling v. Commonwealth, 14 Va. App. 158, 163, 415 S.E.2d 870, 872 (1992) (quoting Kastigar v. United States, 406 U.S. 441, 446 (1972)). "[I]mmunity statutes are designed to serve as substitutes for the fifth amendment right to incriminate oneself. Without such statutes, no person in a criminal case can constitutionally be compelled to testify." State v. Jones, 328 N.W.2d 166, 174 (Neb. 1982). "Such a statute makes 'immunity' the legislatively sanctioned compensation for an individual's forfeiture of his privilege against self-incrimination when he has been compelled to deliver up self-incriminating testimony or evidence." State v. Barthelme, 172 P.3d 201, 203 (Okla. Crim. App. 2007).

Barthelme, a recent decision of the Court of Criminal Appeals of Oklahoma, involved a defendant who made admissions of illegal gambling to an investigator in the course of an out of

court interview. Id. at 202. The text of the state immunity statute did not expressly require compulsion as a prerequisite, and the defendant argued that his statements were inadmissible pursuant to the statute. Id. Following a thorough review of the way other jurisdictions have interpreted various immunity statutes, the court decided the statute did not apply because the admissions were voluntary. "The point that was missed by the court below in the instant case is that a defendant in Barthelme's position cannot claim immunity from prosecution by showing he volunteered a statement which incriminated him. Compulsion is a condition precedent for immunity." Id. at 204. According to the court's analysis of several cases, including the Florida Supreme Court's decision in Jenny v. State, 447 So. 2d 1351 (Fla. 1984), much discussed in appellant's brief:

> [A]uthorities in other jurisdictions have made clear that their statutes also assume compulsion as a prerequisite. These jurisdictions (depending on the particular wording of their immunity statute), differ as to the form the compulsion must take, as well as whether the statute is "self-executing" or requires invocation of the Fifth Amendment privilege before it can apply. Nevertheless, despite such variations, we have found no jurisdiction that allows immunity to attach without the presence of some type of compulsion.

Barthelme, 172 P.3d at 204-05. Jenny decided that a transactional immunity provision of a state statute was self-executing and did not require the witness to invoke his Fifth Amendment privilege. Jenny, 447 So. 2d at 1353. However, the statute expressly applied to testimony given under subpoena, and the record in Jenny reflected that the defendant whose conviction was reversed had been served with a subpoena. Id. at 1352. See State v. Carroll, 515 P.2d 1299, 1303 (Wash. 1973) (because of subpoena, witness was compelled to testify at grand jury proceeding, "requiring the witness under such circumstances to invoke the privilege against self-incrimination would be requiring the performance of a useless act"). But See State v. Hall, 221 N.W.2d 806, 811-12 (Wis. 1974) (finding that for immunity statute to apply witness "must

- 15 -

be ordered or directed by one having authority so to do to answer under penalty of contempt for failing so to do").

Past decisions of this Court interpreting Code § 18.2-262 also suggest that this particular statute's grant of transactional immunity applies only to a witness who gives compelled testimony. "The word 'offense' as used in this context does not refer to any offense to which he may have at any time testified. It refers only to the offense or offenses for which he was *compelled* to testify under the terms of the statute." Caldwell v. Commonwealth, 8 Va. App. 86, 89, 379 S.E.2d 368, 370 (1989) (emphasis added). "Essentially, former Code § 54-524.107:1 (now Code § 18.2-262) grants 'transactional immunity' to a witness for any drug crimes about which the witness is *compelled* to testify." Tharpe v. Commonwealth, 18 Va. App. 37, 42, 441 S.E.2d 228, 231 (1994) (emphasis added).

Finally, Code § 18.2-262 makes it a criminal offense for failing to answer questions after being given immunity under the statute. "Any person who refuses to testify or produce books, papers, correspondence, memoranda or other records, shall be guilty of a Class 2 misdemeanor." Code § 18.2-262. It is difficult to see what purpose this language would serve if the statute's grant of immunity applied to the voluntary testimony of a witness. I believe the presence of this language clearly demonstrates that the legislature intended the statute to apply only to the compelled testimony of a witness.

There was no evidence in appellant's case that his testimony was compelled. The evidence proffered by the attorneys at his hearing indicated that he did not invoke his Fifth Amendment privilege while testifying. Nor was there any evidence that he attended his codefendant's preliminary hearing in response to a subpoena. Because there was no evidence of either the strong or weak version of state compulsion in this case, this Court does not need to decide what level of compulsion triggers the protection of the statute, i.e. whether the

transactional immunity provision of § 18.2-262 applies to the testimony of any witness who is "compelled" to appear by the prosecution's subpoena or whether the witness must first invoke his Fifth Amendment privilege and be offered the protection of the statute by the Commonwealth's Attorney. Thus, my conclusion that the statute requires some kind of compulsion and that none was present here is enough to affirm appellant's conviction. I therefore concur in the judgment.