HALEY, J.,
concurring in the judgment.
I write separately because I believe the majority’s opinion creates needless uncertainty in the law governing plea agreements. Is a criminal defendant legally bound by any of the terms of his plea agreement before the agreement is presented to and accepted by the trial court? Before today, the answer to this question was a straightforward no. Now it is a more nebulous maybe. However, I agree that the majority reaches the correct result, albeit for the wrong reason, because, in my view, Code § 18.2-262’s grant of transactional immunity applies only to witnesses who give compelled testimony. Because appellant testified voluntarily, I believe his conviction must be affirmed.

*546
ANALYSIS

(1)
The attorney for the Commonwealth described the results of the plea negotiations between the parties for the trial court during the hearing on appellant’s motion to dismiss the indictment.
When we arrived at the preliminary hearing, the Commonwealth took the view that [appellant’s codefendant] was the more culpable person and the Commonwealth struck a deal with the defendant through Mr. Neskis—Mr. Neskis represented [appellant] at that time—to this effect. Commonwealth—obviously, this would happen in the Circuit Court— would drop the transportation charge, which has a mandatory minimum sentence, and [appellant] would plead guilty to the simple possession with intent to distribute more than five pounds in exchange for his testimony at the preliminary hearing and thereafter.
This was a proposed plea agreement. Its provisions included appellant’s guilty plea to one of the charges. The majority suggests that this agreement had two separate provisions, the plea agreement and a related cooperation/immunity agreement. But I cannot agree that the record supports the majority’s view because both of our prior cooperation/immunity cases involved the Commonwealth’s express promise of immunity in exchange for the defendant’s cooperation. Lampkins v. Commonwealth, 44 Va.App. 709, 713, 607 S.E.2d 722, 724 (2005); Commonwealth v. Sluss, 14 Va.App. 601, 604-05, 419 S.E.2d 263, 266 (1992). Before Sluss, there were no cases recognizing cooperation/immunity agreements in Virginia. Id. at 604, 419 S.E.2d at 265. Our Supreme Court has also found cooperation/immunity agreements to be enforceable, but only in the context of a case involving express promises from the Commonwealth that the defendant’s statements would not be used against him except under specific written conditions. Hood v. Commonwealth, 269 Va. 176, 178, 608 S.E.2d 913, 914 (2005). The majority’s suggestion that a cooperation/immunity agreement can be implied from the existence of an ordinary *547 plea agreement together with the defendant’s testimony is completely without precedent in Virginia. The case of Plaster v. United States, 789 F.2d 289, 290-91 (4th Cir.1986), also relied upon by the majority, also involved an express promise of immunity from the government, the promise that the defendant would receive immunity from extradition in return for his cooperation.
In this case, the Commonwealth proffered to the trial court the provisions of the proposed plea agreement at the hearing on appellant’s motion to dismiss the indictment. The defense stipulated to the Commonwealth’s proffer. The proffer, quoted on the previous page, includes no promise of immunity by the prosecution and no waiver of statutory transactional immunity by the defense. The majority never attempts to explain how this agreement can be a cooperation/immunity agreement when it says nothing at all about immunity. The majority is therefore unpersuasive in their insistence that there were two agreements in this case. The record shows only one.
According to our Supreme Court, a defendant is “free to reject the proposed [plea] agreement before it is submitted to a court in spite of any prejudice that the Commonwealth may have incurred.” Commonwealth v. Sandy, 257 Va. 87, 92, 509 S.E.2d 492, 494 (1999). Until adopted by the judgment of the court, a proposed plea agreement is “a mere executory agreement.” Mabry v. Johnson, 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984).
In Sandy, the Commonwealth’s Attorney negotiated with the defense attorney, and the result of their negotiations was a signed document. Sandy, 257 Va. at 89, 509 S.E.2d at 492. The document provided that the defendant would meet with and answer the questions of the Commonwealth’s Attorney. Id. If the prosecutor were satisfied that the defendant provided full and complete information, the document stated that the Commonwealth would amend seven of the indictments to misdemeanors, agree that the defendant should serve a six-month jail sentence on each of them, the sentences to run *548 concurrently with one another, and that the remaining charges would be dismissed. Id. After defendant had four meetings with the Commonwealth’s Attorney, the Commonwealth’s Attorney refused to honor the agreement and the defendant asked the trial court for specific performance of the plea agreement. Id. at 90, 509 S.E.2d at 493. The trial court held that there “was no agreement that could be enforced by the court.” Id. This Court reversed the defendant’s conviction. But the Supreme Court of Virginia reinstated the conviction. Citing Rule 3A:8(c)(1)(C)(2) of their Rules, the Supreme Court stated:
This Rule, which governs plea agreements in this Commonwealth in criminal proceedings, states in relevant part that “if a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court.” This Rule also provides that the circuit court approve the plea agreement. The Commonwealth correctly points out, and the defendant concedes, the agreement in this case was never approved by the circuit court as required by Rule 3A:8.
Id. at 91, 509 S.E.2d at 494. “We hold that a Commonwealth’s Attorney may withdraw from a proposed plea agreement at any time before the actual entry of a guilty plea by a defendant or any other change of position by the defendant resulting in prejudice to him because of reliance upon the agreement.” Id.
The majority concedes that appellant was not bound by the plea agreement at the time he moved for dismissal of the charges. However, they still hold that the anticipated agreement somehow operated to waive appellant’s protection under the immunity statute. “By voluntarily testifying as a witness at Dickson’s preliminary hearing, with the understanding at that time that the Commonwealth would later withdraw one of his charges, Murphy implicitly waived any immunity he may have had under Code § 18.2-262.” Ante at 543-44, 649 S.E.2d at 542. I do not think this approach is consistent with Sandy. *549 Sandy reinstated the trial court’s ruling that, “there was no agreement between the defendant and the Commonwealth that could be enforced by the court.” 257 Va. at 90, 509 S.E.2d at 493. In this case, the trial court gave legal effect to part of a similar agreement by holding that the proposed agreement acted as a waiver of Code § 18.2-262. Therefore the trial court’s ruling constituted court enforcement of a type of agreement that our Supreme Court has expressly held to be unenforceable against a defendant until after the parties meet the requirements of Rule 3A:8. Id. at 91, 509 S.E.2d at 494.
The majority reasons that appellant’s motion to dismiss the charges acted as a repudiation of the plea agreement. Appellant could legally do this because the agreement had not yet been approved by the court pursuant to Rule 3A:8. This repudiation, the majority continues, did not affect a waiver of appellant’s statutory rights that predated his motion to dismiss. The majority compares this case to a consent search of a house, citing United States v. Bily, 406 F.Supp. 726 (E.D.Pa.1975), and explaining that the owner of the house could withdraw his prior consent to a search of his house, but that the homeowner’s withdrawal of consent to search would not mandate the suppression of evidence the agents had discovered before he withdrew his consent. The logical difficulty is that the majority’s argument simply assumes that the proposed plea agreement was an implicit waiver of immunity. They never explain why, and they cite no authority for the proposition that it was. Following this initial assumption with a more reasoned discussion of its procedural implications can only disguise the error for so long. The analogy to the house search is also unpersuasive. An important difference between that case and this one is that there was no rule of court or judicial decision telling the owner of that house that he could wait until a later date to make his mind up about whether he really wanted his consent to the search of his house to have any legal effect whatsoever.
(2)
Because I do not believe the proposed plea agreement waived any right appellant may have had to immunity, I now *550 consider whether Code § 18.2-262 applied to appellant’s testimony. I concur in the result reached by the majority. I do so, however, on the grounds that there is no evidence in the record that appellant’s testimony was compelled. One reason why I believe there is a compulsion requirement for statutory immunity is the relationship of immunity statutes generally to the Fifth Amendment privilege against compulsory self-incrimination. “[Sjtate and federal immunity statutes, represent legislative efforts to ‘seek a rational accommodation between the imperatives of the [Fifth Amendment] privilege and the legitimate demands of government to compel citizens to testify.’ ” Gosling v. Commonwealth, 14 Va.App. 158, 163, 415 S.E.2d 870, 872 (1992) (quoting Kastigar v. United States, 406 U.S. 441, 446, 92 S.Ct. 1653, 1657-58, 32 L.Ed.2d 212 (1972)). “[I]mmunity statutes are designed to serve as substitutes for the fifth amendment right to incriminate oneself. Without such statutes, no person in a criminal case can constitutionally be compelled to testify.” State v. Jones, 213 Neb. 1, 328 N.W.2d 166, 174 (1982). “Such a statute makes ‘immunity’ the legislatively sanctioned compensation for an individual’s forfeiture of his privilege against self-incrimination when he has been compelled to deliver up self-incriminating testimony or evidence.” State v. Barthelme, 172 P.3d 201, 203 (Okla.Crim.App.2007).
Barthelme, a recent decision of the Court of Criminal Appeals of Oklahoma, involved a defendant who made admissions of illegal gambling to an investigator in the course of an out of court interview. Id. at 202. The text of the state immunity statute did not expressly require compulsion as a prerequisite, and the defendant argued that his statements were inadmissible pursuant to the statute. Id. Following a thorough review of the way other jurisdictions have interpreted various immunity statutes, the court decided the statute did not apply because the admissions were voluntary. “The point that was missed by the court below in the instant case is that a defendant in Barthelme’s position cannot claim immunity from prosecution by showing he volunteered a statement which incriminated him. Compulsion is a condition precedent *551 for immunity.” Id. at 204. According to the court’s analysis of several cases, including the Florida Supreme Court’s decision in Jenny v. State, 447 So.2d 1351 (Fla.1984), much discussed in appellant’s brief:
[Ajuthorities in other jurisdictions have made clear that their statutes also assume compulsion as a prerequisite. These jurisdictions (depending on the particular wording of their immunity statute), differ as to the form the compulsion must take, as well as whether the statute is “self-executing” or requires invocation of the Fifth Amendment privilege before it can apply. Nevertheless, despite such variations, we have found no jurisdiction that allows immunity to attach without the presence of some type of compulsion.
Barthelme, 172 P.3d at 204-05. Jenny decided that a transactional immunity provision of a state statute was self-executing and did not require the witness to invoke his Fifth Amendment privilege. Jenny, 447 So.2d at 1353. However, the statute expressly applied to testimony given under subpoena, and the record in Jenny reflected that the defendant whose conviction was reversed had been served with a subpoena. Id. at 1352. See State v. Carroll, 83 Wash.2d 109, 515 P.2d 1299, 1303 (1973) (because of subpoena, witness was compelled to testify at grand jury proceeding, “requiring the witness under such circumstances to invoke the privilege against self-incrimination would be requiring the performance of a useless act”). But See State v. Hall, 65 Wis.2d 18, 221 N.W.2d 806, 811-12 (1974) (finding that for immunity statute to apply witness “must be ordered or directed by one having authority so to do to answer under penalty of contempt for failing so to do”).
Past decisions of this Court interpreting Code § 18.2-262 also suggest that this particular statute’s grant of transactional immunity applies only to a witness who gives compelled testimony. “The word ‘offense’ as used in this context does not refer to any offense to which he may have at any time testified. It refers only to the offense or offenses for which he was compelled to testify under the terms of the statute.” Caldwell v. Commonwealth, 8 Va.App. 86, 89, 379 S.E.2d 368, 370 (1989) (emphasis added). “Essentially, former Code § 54- *552 524.107:1 (now Code § 18.2-262) grants ‘transactional immunity’ to a witness for any drug crimes about which the witness is compelled to testify.” Tharpe v. Commonwealth, 18 Va.App. 37, 42, 441 S.E.2d 228, 231 (1994) (emphasis added).
Finally, Code § 18.2-262 makes it a criminal offense for failing to answer questions after being given immunity under the statute. “Any person who refuses to testify or produce books, papers, correspondence, memoranda or other records, shall be guilty of a Class 2 misdemeanor.” Code § 18.2-262. It is difficult to see what purpose this language would serve if the statute’s grant of immunity applied to the voluntary testimony of a witness. I believe the presence of this language clearly demonstrates that the legislature intended the statute to apply only to the compelled testimony of a witness.
There was no evidence in appellant’s case that his testimony was compelled. The evidence proffered by the attorneys at his hearing indicated that he did not invoke his Fifth Amendment privilege while testifying. Nor was there any evidence that he attended his codefendant’s preliminary hearing in response to a subpoena. Because there was no evidence of either the strong or weak version of state compulsion in this case, this Court does not need to decide what level of compulsion triggers the protection of the statute, i.e. whether the transactional immunity provision of § 18.2-262 applies to the testimony of any witness who is “compelled” to appear by the prosecution’s subpoena or whether the witness must first invoke his Fifth Amendment privilege and be offered the protection of the statute by the Commonwealth’s Attorney. Thus, my conclusion that the statute requires some kind of compulsion and that none was present here is enough to affirm appellant’s conviction. I therefore concur in the judgment.